**UNITED STATES, Appellant.**

v.

**Louis S. BAILEY, Private First Class, U.S. Army, Appellee.**

No. 49,750.
CM 444552.

U.S. Court of Military Appeals.

Jan. 27, 1986.

For United States: *Captain Thomas E. Booth* (argued); *Colonel James Kucera* and *Lieutenant Colonel Adrian J. Gravelle* (on brief).

For Accused: *Captain Craig E. Teller* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Harry L. Williams, Jr.* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge sitting as a general court-martial at Fort Riley, Kansas, tried Bailey on charges alleging that on April 15,

1983, he had wrongfully distributed and wrongfully possessed five tablets of lysergic acid diethylamide (LSD); that on May 11, he had attempted to wrongfully distribute nine tablets of LSD and on that same date had stolen $30.00, which was property of the United States Government; and that on May 13, he had wrongfully possessed 2.29 grams of marihuana. These charges were alleged as violations of Articles 80, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 921, and 934, respectively. Bailey pleaded guilty to the larceny, distribution of the five tablets of LSD, and possession of the marihuana; he pleaded not guilty to the other charges; and the judge entered findings consistent with the pleas. The sentence adjudged was a dishonorable discharge, confinement for 2 years, total forfeitures, and reduction to the grade of Private E-1. Pursuant to a pretrial agreement, the confinement was reduced by 6 months; otherwise the findings and sentence were approved by the convening authority.

The Court of Military Review concluded that Bailey's pleas of guilty had been improvident with respect to the distribution of the five tablets of LSD on April 15 and the larceny on May 11; and the Court offered the convening authority several alternatives for remedial action.[1] 18 M.J. 749 (1984). The Acting Judge Advocate General of the Army certified this issue for our review:

> WHETHER THE ARMY COURT CORRECTLY HELD THAT THE ACCUSED RAISED THE ENTRAPMENT DEFENSE WHEN HE SAID THAT HE RESPONDED TO REPEATED REQUESTS FOR DRUGS BY GOVERNMENT AGENTS BY SUPPLYING THEM WITH BOGUS DRUGS AND STEALING $30.00 FROM THEM.

1. One alternative was a rehearing on the affected findings and the sentence; a second was approval of a finding of guilty of possessing five tablets of LSD on April 15 and a rehearing on sentence only; and the third was reassessment of the sentence by the convening authority

## I

During the providence inquiry, Bailey testified that a fellow soldier, John Valdez, knew that he occasionally possessed and used LSD. Valdez told him, "I got a guy that wants some LSD, and wants to buy some LSD from you"; and "[h]e said that for about a month straight, everyday". During this time, Bailey "indicated ... that ... [he] didn't want to get involved in any sale of LSD"; but finally, he agreed with Valdez "to meet him and Joe," who was an undercover criminal investigator, in a parking lot on April 15; and at that time he sold five tablets of LSD to Joe for $20.00. He did this "just to get ... [Valdez] off ... [his] back."

On May 11, Bailey made another sale to Joe. At that time he delivered nine tablets to the buyer, which he represented to be LSD; and, in return, he received $30.00. However, as Bailey knew, the tablets did not contain LSD. His purpose in conducting this "flimflam" was "[t]o get him off my back"; and his premise was that when the buyer "realized that he'd been taken, then he wouldn't deal with ... [Bailey] any more." Because of this undercover operation, Bailey was apprehended on May 13, at which time 2.29 grams of marihuana was found in his possession.[2]

The military judge inquired of Bailey whether he had talked with his counsel about the defense of entrapment and received an affirmative answer. Defense counsel also affirmed that, after extensive research, he was convinced that "no legal defense of entrapment" existed.

## II

### A

Distribution of drugs is usually considered a more serious offense than their

based on the marihuana-possession offense. 18 M.J. 749, 751.

2. The court-martial's finding that Bailey was guilty of possessing this marihuana was left intact by the Court of Military Review because it was not affected by any entrapment defense.

possession or use. *Cf.* para. 127*c*, Section A, Table of Maximum Punishments, Manual for Courts-Martial, United States, 1969 (Revised edition). The person who wrongfully distributes controlled substances has made a conscious choice to subject others to a well-recognized hazard to their health and morals.

■ Because distribution of drugs is a separate offense with a distinctive criminal intent, the circumstance that an accused has possessed and used a drug does not preclude his advancing an entrapment defense in a prosecution for its distribution.[3] *See United States v. Skrzek*, 47 C.M.R. 314 (A.C.M.R.1973). That defense will succeed if the factfinder determines that, even though the accused had previously possessed and used drugs, the idea of selling them was first planted in his mind by government agents. Accordingly, even though Valdez was aware of Bailey's prior possession and use of LSD, Bailey was free to assert entrapment with respect to the present charge of distribution.

Apparently, the military judge was confused in this regard, for, as noted by Senior Judge Wold in his opinion of the court below,

> [t]he record of trial indicates that the trial judge, trial defense counsel and appellant [Bailey] all concluded that appellant's plea was provident based in part on the application of the objective theory of entrapment, a theory which was rejected in the line of cases culminating in *United States v. Vanzandt*, 14 M.J. 332 (C.M.A. 1982), and *in part on the premise that entrapment was negated by appellant's acknowledged predisposition to possess and use LSD*, a premise that was rejected in *United States v. Skrzek*, 47 C.M.R. 314 (A.C.M.R. 1973).

18 M.J. at 750 (emphasis added).

■ Because the judge and counsel proceeded on the basis of an erroneous legal premise, the entrapment defense was not eschewed in any way by Bailey's responses during the providence inquiry. Accordingly, we agree with the Court of Military Review that his account of the sale of the five LSD tablets on April 15 sufficed to raise the entrapment defense, and so the pleas of guilty should not have been accepted with respect to the wrongful distribution charge.

## B

Bailey was also charged with stealing the $30.00 which he was paid by the undercover agent on May 11. Alternatively, it was alleged that he had attempted to distribute nine tablets of LSD on that date. The rationale for this alternative pleading was that, if Bailey knew that the tablets were not LSD, he obtained $30.00 by means of a false pretense and was guilty of larceny; but if he believed the tablets to contain LSD, he was guilty of attempted wrongful distribution.

■ Even though the second sale occurred almost a month after the first, this does not preclude invocation of the entrapment defense, because that defense applies not only to the original crime induced by a government agent but also to subsequent acts which are "part of a course of conduct which was the product of the inducement." *Sherman v. United States*, 356 U.S. 369, 374, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958). As Chief Judge Hodson explained in *Skrzek*:

> It would seem to be contrary to public policy to permit narcotics agents to use any trickery to induce a sale, then make subsequent buys, and, by not charging the first sale, insulate subsequent transactions from the effect of their misconduct. *Sherman v. United States*, supra; *United States v. Butler*, 41 CMR 620 (ACMR 1969).

47 C.M.R. at 318. The Government insists that the larceny was an independent act

---

3. This is not to say that evidence of possession and use is irrelevant in demonstrating that a predisposition exists to distribute. Persons who possess and use a controlled substance are logically more likely to have considered distributing it than someone who has no familiarity with drugs.

and, in this connection, emphasizes that the elements of larceny are very different from those of a drug offense. The issue here is similar to those which are confronted in determining whether a causal relation exists between two events.

Certainly if Bailey had killed the undercover agent in order to put an end to the drug involvement induced by Valdez, entrapment would not be available as a defense. Such a response would be so unusual, unforeseeable, and disproportionate, that it could not be considered to have resulted from the original inducement.

■ On the other hand, as appellate defense counsel point out, even though distribution of LSD and larceny are quite distinct conceptually, here the larceny was part of the same "course of conduct" resulting from the initial inducement. The same parties were involved—Bailey, Valdez, and Joe; both sales took place in the parking lot; and, in each instance the sale was of tablets represented to contain LSD. If the substance delivered by Bailey to Joe on May 11 had been LSD, and he had been prosecuted for wrongful distribution, entrapment would have been available as a defense. *United States v. Sherman* and *United States v. Skrzek*, both *supra*. Likewise, if Bailey had mistakenly believed the tablets contained LSD—even though they did not—then his attempted distribution would have been excused by entrapment.[4] Under these circumstances we do not believe that the relation between the inducements from Valdez and the obtaining of the $30.00 from Joe was so attenuated that the entrapment defense is unavailable as to the larceny.[5]

Although we affirm the decision of the United States Army Court of Military Re-

view and answer the certified issue in the affirmative, we emphasize that the members of the court below did not decide, in the exercise of their factfinding powers, that they believed Bailey's explanation for the two sales. Instead, the court below only ruled that, if this explanation were believed by a factfinder, then Bailey was entrapped; and so his guilty pleas cannot be allowed to stand. *Cf.* Article 45(a), UCMJ, 10 U.S.C. § 845(a).

### III

The decision of the United States Army Court of Military Review is affirmed.

COX, Judge (concurring):

Because the issue certified by the Acting Judge Advocate General does not challenge the correctness of the Court of Military Review's determination that entrapment as to the drug offense was raised by the providence inquiry, I am bound by that conclusion. That being the case, I agree that Bailey's subsequent responses did not unequivocally refute the possibility that the larceny charge was also the product of the assumed initial inducement. I write only to remind military judges and counsel that once entrapped does not necessarily mean always entrapped. *See United States v. Hill*, 481 F.Supp. 558, 560 (E.D.Pa.1979), *rev'd. on other grounds*, 655 F.2d 512 (3d Cir.1981).

Claims of initial entrapment are, of course, ordinarily "for the jury as part of its function of determining the guilt or innocence of the accused." *Sherman v. United States*, 356 U.S. 369, 377, 78 S.Ct. 819, 823, 2 L.Ed.2d 848 (1958) (footnote omitted). In like manner, contentions that subsequent misconduct was the product of

---

**4.** Both distribution and attempted distribution of drugs authorize maximum punishments considerably greater than that allowed for the larceny of $30.00 of which Bailey was convicted. *See* para. 127*c*, Section A, Table of Maximum Punishments, Manual for Courts-Martial, United States, 1969 (Revised edition).

**5.** In view of the explanation which Bailey gave as to his reason for the "flimflam," we inquired during oral argument whether his answers dur-

ing the providence inquiry negated the *mens rea* required for larceny. Citing *United States v. Kastner*, 17 M.J. 11 (C.M.A.1983), government appellate counsel pointed out that Bailey's explanation that he was obtaining the $30.00 through misrepresentation in order to discourage his buyer from annoying him by further requests for LSD concerned motive rather than intent.

the original inducement—and not some later inspiration—are also generally matters to be resolved by the factfinder. *United States v. North,* 746 F.2d 627, 630 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985) (jury could find that the accused's discovery of the profitability and ease of drug selling, rather than the original government inducement, was the cause of his later drug trafficking); *United States v. Brown,* 544 F.2d 1155, 1157 n. 5 (2d Cir.1976); *United States v. Hill, supra* (entrapment as to first drug sale did not have to be carried over to successive sales, in view of accused's increasingly active role in the business).

Here, if Bailey is to be believed, he decided to "flimflam" the undercover agent in order "[t]o get him off … [his] back." In a rehearing, should Bailey prevail on the drug charge with an entrapment theory, the factfinder must still decide whether the larceny was the product of the initial inducement or some other source. That the two offenses can be described as a continuing course of conduct does not determine this aspect of the case.