**UNITED STATES**

v.

**Kevin J. ECKHOFF, 472 92 6071 Seaman (E–3), U.S. Navy.**

**NMCM 86 1912.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 3 March 1986.

Decided 27 Feb. 1987.

CDR FREDERICK N. OTTIE, JAGC, USN, Appellate Defense Counsel.

LT DONALD F. O'CONNOR, JAGC, USNR, Appellate Defense Counsel.

LCDR LAWRENCE W. MUSCHAMP, JAGC, USN, Appellate Government Counsel.

Before GLADIS, CASSEL and MIELCZARSKI, JJ.

GLADIS, Judge:

Charged with conspiracy, violation of general regulations (three specifications), wrongful use of marijuana (two specifications), wrongful use and possession of cocaine, wrongful distribution of marijuana and cocaine (three specifications), and larceny, in violation of Uniform Code of Military Justice (UCMJ), Articles 81, 92, 112a, and 121, 10 U.S.C. §§ 881, 892, 912a, and 921, the accused pleaded guilty at a general court-martial composed of officer and enlisted members to wrongful use of marijuana (two specifications) and wrongful use of cocaine. He was acquitted of one specification of violation of a general regulation and one specification of wrongful distribution of marijuana, but convicted contrary to his pleas of conspiracy, violation of general orders (two specifications), possession of cocaine, wrongful distribution of marijuana and cocaine (two specifications), and wrongful appropriation. The convening authority approved the adjudged sentence

to a bad-conduct discharge, confinement for 30 days, forfeiture of $400.00 per month for 2 months, and reduction to pay grade E–1.

Among other things, the accused contends that the military judge committed plain error because he instructed the members that either involvement in unlawful activity or a profit motive defeats the defense of entrapment. We disagree and affirm.

### Profit Motive

The military judge's instruction on the defense of entrapment included the following language:

> If you find that the accused entered into an unlawful transaction for the purpose of realizing a profit, he has not been entrapped. For the profit motive, not inducement on the part of the government agents, provides the incentive for commission of the defense [sic]. A profit motive forecloses the defense of entrapment absence [sic] evidence of conduct by the government agents or people cooperating with them which violates fundamental fairness and a shocking [sic] to your universal sense of justice....

He repeated it when the members interrupted their deliberations to seek further clarification.

The language is taken from our opinion in *United States v. Beltran*, 17 M.J. 617 (N.M.C.M.R.1983), *pet. denied*, 18 M.J. 440 (C.M.A.1984). In that case, citing *United States v. Hebert*, 1 M.J. 84 (C.M.A.1975), we approved an instruction that a "profit motive will destroy an entrapment defense." In *Hebert*, the Court of Military Appeals rejected the contention that the accused's pleas were improvident because evidence in extenuation raised the defense of entrapment, finding that nothing in this evidence contradicted the ample evidence of criminal predisposition provided by the ac-

cused's responses during the providence inquiry. The Court noted that his profit motive foreclosed the defense of entrapment absent evidence of conduct by the government agents which violated fundamental fairness shocking to the universal sense of justice.

■ After this case was tried, the Army and Air Force Courts of Military Review declined to follow *Beltran*. In a scholarly analysis of the law of entrapment, the Army Court in *United States v. Meyers*, 21 M.J. 1007 (A.C.M.R.1986), rejected the view that *Hebert* is precedent for the rule that an accused's profit motive, once shown, automatically negates an entrapment defense. Consistent with the subjective test of entrapment which has been adopted by the military, an accused's need for money is a relevant factor to be considered when determining the element of predisposition.[1] Such a factor may or may not show that an accused was predisposed to commit a criminal act, depending on its significance relative to other evidence in the case.[2] *Id.* at 1013–1014. The Air Force Court in *United States v. O'Donnell*, 22 M.J. 911 (A.F.C.M.R.1986), followed *Meyers*, agreeing that the presence or absence of a profit motive is one of several factors to be considered in determining an accused's predisposition to engage in criminal activity. This is in accord with federal decisions cited in *O'Donnell*, 22 M.J. at 913, which treat profit motive as a key factor, but only one factor to be weighed along with others. The Court of Military Appeals in *United States v. Vanzandt*, 14 M.J. 332, in providing a virtual restatement of the law of entrapment, not only failed to enunciate a profit motive rule, but cited *Hebert* as standing for the more limited proposition that the possibility of entrapment is precluded when an accused immediately agrees to a sale of drugs and accepts money therefor without hesitation. *O'Donnell*, at 913. The rule

---

1. The subjective test of entrapment involves balancing the accused's resistance to temptation against the amount of inducement. The focus is on the accused's latent predisposition to commit the crime, which is triggered by the government

inducement. *United States v. Vanzandt*, 14 M.J. 332, 344 (C.M.A.1982).

2. *Cf. United States v. Bailey*, 21 M.J. 244, 247–248 (C.M.A.1986) (Cox, J., concurring).

that one who enters into an unlawful transaction for profit cannot avail himself of the entrapment defense virtually eliminates the defense of entrapment in all cases involving disposition of stolen property, sales of contraband, and other criminal transactions entered into in the expectation of monetary gain. *Id.*

■ We agree with the Air Force Court that it is beyond comprehension that *Hebert*, as viewed in the *Beltran* decision, presaged such a revolutionary refocusing of case law. Charges of such magnitude do not occur in so subtle a fashion, nor do they go unrecognized for so lengthy a period. *O'Donnell*, at 913. Finding the rationale of *Meyers* and *O'Donnell* to be persuasive and the conclusions of those cases, which we have set forth above, to represent the better view, we reject *Beltran* to the extent that it holds an accused's profit motive, once shown, automatically negates an entrapment defense. Therefore, we conclude that the military judge's instruction on profit motive in this case was erroneous.

■ Left for consideration is whether the erroneous instruction was plain error. Counsel did not object at trial. Rule for Courts-Martial 920(f) provides that failure to object to an instruction constitutes waiver of the objection in the absence of plain error. In order to constitute plain error, the error must not only be obvious and substantial, it must also have had an unfair prejudicial impact on the deliberations of members. *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986). The plain error doctrine is invoked to rectify those errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings. As a consequence it is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result. *Id.* at 328–329.

■ We find that, although the profit motive instruction in this case was erroneous, the error does not rise to the level of plain error as defined in *Fisher*.[3] We further find that the defense failure to object at trial was not justified because of reliance on *Hebert* and *Beltran*. Counsel are not relieved of the obligation to object at trial to questionable instructions, even though the instructions have long been in use and have been approved by the courts. *See United States v. Salley*, 9 M.J. 189, 193 (C.M.A.1980). The defense failure to object to the instruction at trial waived the error.

*Unlawful Activity*

■ The accused also complains that the military judge committed plain error because he instructed the members that involvement in unlawful activity defeats the defense of entrapment. The judge instructed that if a person is already involved in unlawful activity which the Government is trying to uncover, the fact that an agent provides opportunities, facilities, or assists in the commission does not amount to entrapment. This language standing alone could have been misleading. Because distribution of drugs is a separate offense with a distinctive criminal intent, the circumstance that an accused has possessed and used a drug does not preclude his advancing an entrapment defense in a prosecution for its distribution. *United States v. Bailey*, 21 M.J. 244 (C.M.A.1986). But, there is no risk that the members were misled here. The judge instructed them that the fact that the accused may have previously used or possessed marijuana or cocaine did not establish his predisposition to sell or distribute those substances. Therefore, we reject the assignment of error.

The remaining assignments of error also lack merit.

---

**3.** In *Fisher*, the Court of Military Appeals found that an instructional error did not constitute plain error justifying reversal in spite of the lack of timely objection, but reversed because reliance on its past rulings that such an error was plain error may have resulted in the failure to object at trial. The instructional error in *Fisher* involved omission of a required instruction. The Court of Military Appeals had previously held that failure to give the instruction was plain error.

Accordingly, the findings of guilty and sentence as approved below are affirmed.

Judge MIELCZARSKI concurs.

CASSEL, Judge (concurring in the result):

I concur in the result reached by my brothers but I expressly disassociate myself from the opinion and dissent from its factual and philosophical basis.

First, I find no error in the instructions given as a whole; my brothers have taken one segment of a complex paragraph [1] of correct instructions regarding the logical process required by the members before they could find appellant guilty of certain of the charges. The military judge correctly informed them that they must be convinced beyond a reasonable doubt of appellant's guilt, then they must consider the defense of entrapment which was raised by the evidence and that the Government must prove beyond a reasonable doubt that he was not entrapped, that if entrapment were found to exist it would be presumed to continue to exist and affect later actions unless the prosecution could prove, again

1. The full paragraph is quoted here:

   MJ: ... The evidence has raised the issue of entrapment with relation to the offenses alleged in Charge I, Specifications 5, 6, and 7 under Charge III, and Charge IV. Entrapment is a defense when government agents or people cooperating with them cause an innocent person to commit a crime which otherwise would not have occurred. The accused cannot be convicted of the offenses to which the entrapment defense applies if he was entrapped. An innocent person is one who is not predisposed or inclined to readily accept the opportunity furnished by someone else to commit the offense charged.
   DC: Could we back up a second?
   MJ: Certainly.
   DC: Could you restate that one, I would like to get that.
   MJ: An innocent person is one who is not predisposed or inclined to readily accept the opportunity furnished by someone else to commit the offense charged. It means that the accused must have committed the offenses only because of inducements, enticements, or urging by representatives of the government. You should carefully note that if a person has a predisposition, inclination, or intent to commit an offense or is already involved in unlawful activity which the government is trying to uncover, the fact that an agent provides opportunities, facilities, or assist in the commission, does not amount to entrapment. You should be aware that law enforcement agents can engage in trickery and provide opportunities for criminals to commit offenses, but they cannot create criminal intent in otherwise innocent persons and thereby cause criminal conduct. The defense of entrapment exists if the original suggestion and initiative to commit the offenses originated with the government, not the accused, and the accused was not predisposed or inclined to commit the offenses. Thus, you must balance the accused resistant [sic] to temptation against the amount of government inducement. The focus is on the accused's late and [sic] predisposition, if any, to commit the offenses which is triggered by the government's inducement. You are further advised that the latitude given the government, inducing the criminal act, is considerably greater in contraband cases than would be permissible as to other crimes. In deciding whether the accused was intrapped [sic], you should consider, of all the evidence presented on this matter. Entrapment is a complete defense. The burden of proof to establish the guilt of the accused remains on the prosecution. Therefore, you must be convinced beyond a reasonable doubt that the accused was not entrapped. If you find that the accused entered into an unlawful transaction for the purpose of realizing a profit, he has not been entrapped. For the profit motive, not inducement on the part of the government agents, provides the incentive for commission of the defense [sic]. A profit motive forecloses the defense of entrapment, absence [sic] evidence of conduct by the government agents or people cooperating with them which violates fundamental fairness and a shocking [sic] to your universal sense of justice. The law presumes that an initial entrapment continues until the prosecution establishes to the contrary. Therefore, if you find that Seaman Eckhoff was entrapped on 17 July 1985, then regarding subsequent and similar incidents, the prior and lawful enducement should be presumed to consider to continue until the prosecution has proven otherwise beyond a reasonable doubt. You are further advised that the fact that Seaman Eckhoff may have previously used or possessed marijuana or cocaine does not establish his predisposition to sell or to distribute those two drugs. You may consider, however, the accused's prior relationship with PFC Collier to its bearing, if any, on his predisposition to conspire with him, to distribute controlled substances, or his predisposition to aid and abet PFC Collier in the distribution of controlled substances. (R. 280–281)

beyond a reasonable doubt, it did not. It is clear that the members were closely following the progression because of the questions asked, for example, when one member asked:

MEMBER (LIEUTENANT COMMANDER FOWLER): Yes, just for clarification, in order for entrapment to have occurred, the original suggestion to commit the offense must have come from someone other than the accused, and the accused was not predisposed to commit the crime, is that—

MJ: Yes.

The overall instructions given by the military judge were legally and factually correct and caused no legal prejudice to appellant. It was not alleged as error by the trial defense counsel, it is assigned as "plain error" by appellant now. My brothers find no prejudice to appellant as a result of the error they find. So why then should my brothers treat it as error? While it may be a form of self-gratification to find harmless legal error in proceedings below, I feel that is contrary to proper appellate practice and the instruction of the Supreme Court.

Often ignored, but still our statutory basis for action, is Article 59(a) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) which states:

A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.

While it seems clear to me that this statute precludes a reversible error *per se* rule, such does not seem to be the universal opinion of appellate judges. Rather than make an unseemly appearing critique of our system, a review of the Article III

courts' experience with the very similarly worded "harmless error" rule of 28 U.S.C. 2111 and Rule 52 of the Federal Rules of Criminal Procedure is in order.[2] The federal harmless error statute was first enacted in 1919 and last modified or reenacted in 1949. The Rule was enacted in 1946, but it was not until 1983 that the Supreme Court finally made it pointedly clear that it is the reviewing Court's duty to consider the trial record as a whole and to ignore errors that are harmless, including constitutional violations. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 1975, 76 L.Ed.2d 96 (1983). *See also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This rule applies to appellate courts in their capacity as supervisory authorities over lower courts as well as in their substantive review of the legal issues involved. A year later in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Justice O'Connor provided a three-step procedure for use in evaluating a claim of inadequate representation by counsel, namely:

a) examine the performance of counsel and determine if it met adequate standards;

b) if the performance was deficient, did it prejudice the defendant?

c) If it is easier for the reviewing court to dispose of an ineffectiveness claim on the grounds that there is no prejudice that should be done first.

I suggest that this procedure should be in general use, especially in the case of intermediate appellate courts such as ours or the Court of Military Appeals; and, thus, in the examination of a record of trial for errors when an error of law has either been assigned by appellate counsel, or, in the case of plain error, first noted by the

---

**2.** 28 U.S.C. 2111 is as follows:

*Harmless error*

On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties. (Added May 24, 1949, c. 139, § 110, 63 Stat. 105.)

Rule 52 is:

(a) *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Court, the Court should first look to the issue of prejudice and, if there is a real likelihood of there being some, the alleged error must be clearly addressed; if there is no prejudice there is no need to address the alleged error or, to put it another way, if there is no prejudice the court should note the alleged error and perhaps comment generally but, unless it serves a clearly defined need in the development of legal practice (this would primarily apply to procedural matters or some others that are more or less standard and common to all or a large number of trials), the court should avoid needless technical distinctions or niceties that would be of little or no benefit to trial judges or practitioners in future cases.[3] Such a practice would, I believe, encourage the trial judges to act as did the judge in the case to expressly tailor the guidance given to the members and to keep the trial process moving fairly. For while the decisions in the appellate process are similar to those made in deciding the application of rules in a professional football game (well-matched and well-trained teams with plenty of expert assistance and the type of action which can be played and considered in discrete periods with the availability of the instant video replay), the trial judge is more like the referee in a youth basketball game where the motion is continuous, the players of varying degrees of ability and training, and there is no way to examine and reexamine each call; there is no need for us to add to the already present needless and distracting heckling.

In summary, while the principal opinion is an excellent treatise on the general interrelationship of entrapment and the profit motive, I feel it is inappropriate as the opinion of an intermediate appellate court.

---

**3.** *See generally Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), especially at 66 S.Ct. 1245, where the Court in addressing the purpose of the earlier harmless error statute said:

> The general object was simple, to substitute judgment for automatic application of rules; to preserve review as a check upon arbitrary action and essential unfairness in trials, but at the same time to make the process perform that function without giving men fairly convicted the multiplicity of loopholes which any highly rigid and minutely detailed scheme of errors, especially in relation to procedure, will engender and reflect in a printed record.