UNITED STATES, Appellee,

v.

**Private First Class Samuel J. HUNT, 344–66–0297, United States Army, Appellant.**

**ACMR 9002737.**

U.S. Army Court of Military Review.

18 Feb. 1992.

---

For Appellant: Major Michael B. Kelleher, JAGC, Captain Michael P. Moran, JAGC, Captain Timothy M. Lawlor, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Major Kenneth T. Grant, JAGC, Captain Samuel J. Smith, Jr., JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of wrongfully distributing 1.81 grams of hashish on 5 April 1990, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1982 and Supp. V 1987). His approved sentence provides for a bad-conduct discharge, confinement for nine months, forfeiture of all pay and allowances, and reduction to Private E1.

■ After initially examining the record, we requested briefs on the question of whether the evidence was legally and factually sufficient to establish that the appellant was not entrapped. The appellant has conceded that he distributed hashish to a government confidential informant, but contends that the informant induced him to effect the transaction when the appellant was not predisposed to commit the offense. The government's opposing argument is that the appellant was predisposed to enter into the transaction and merely availed himself of the drug selling opportunity presented by the confidential informant. We find that the evidence supporting the appellant's conviction is factually deficient.

The record reveals that investigators of the Army's Criminal Investigation Command (CID) were informed that the appellant was distributing drugs in his military community in Germany. The informant was a Mr. Palmer, an unemployed former serviceman living in Germany, who had previously made controlled purchases of drugs from service personnel while working under the authority of CID. The defense called Palmer, an admitted drug user, alcoholic, and petty criminal, who testified that his sole source of income came from working as a confidential informant for military criminal investigators. Palmer claimed he was normally paid fifty deutschemarks per gram for reporting a drug deal.

According to Palmer's CID contact, Agent Cunningham, the appellant was targeted because CID believed he could lead them to one Erica, a German national and suspected wholesaler, who was supplying drugs to retail distributors. Agent Cunningham also indicated that the appellant had been identified by several other soldiers in his unit as a drug distributor. In contrast to Palmer's testimony, Agent Cunningham testified that Palmer would be paid fifty deutschemarks if he succeeded in setting up drug deals that resulted in "physical evidence of a crime [having] been seen."

Palmer testified that he had approached the appellant in the latter's barracks on six or seven occasions during the two weeks prior to 5 April 1990, in an attempt to set up a deal, but the appellant refused his entreaties. On some of these occasions, Agent Cunningham accompanied him. One of the appellant's barracks mates verified that he had seen Palmer and Agent Cunningham together in the barracks dayroom prior to 5 April. Another said that the appellant had told him to tell Palmer he was not in the barracks if Palmer came

looking for him. Eventually, on 5 April the appellant agreed to meet Palmer at an off-base fast food restaurant in order to effect a drug deal. However, when he and Agent Cunningham went to the restaurant to consummate the deal, the appellant failed to show up. They then went to the appellant's barracks, where they found the appellant and asked him, "Are we going to do this?" The appellant replied, "Yeah," left the room and obtained either one or two pieces of hashish.[1] Subsequently, he sold one piece of hashish to them for fifty deutschemarks.

The government failed to present any direct evidence that the appellant had distributed drugs prior to 5 April although it did present some evidence that he had used drugs. Witnesses for the defense attested to the appellant's reputation for not using or distributing drugs. Moreover, in rebuttal, the defense presented testimony from Palmer to contradict two key points in Agent Cunningham's testimony—that he [Cunningham] had never heard of Erica prior to 5 April; and that certain individuals had informed Agent Cunningham that the appellant was a barracks drug distributor.

The law of entrapment has been capsulized by the Court of Military Appeals in *United States v. Vanzandt*, 14 M.J. 332 (C.M.A.1982) in the following language:

First, the defense is not raised unless the accused's commission of the alleged criminal act is proven beyond reasonable doubt, and there is evidence that the suggestion or inducement for the offense originated with a government agent. Second, once the defense is raised, the Government must prove that the accused was predisposed to commit the criminal activity and needed only the opportunity to commit the crime. Third, with one limited exception [denial of due process], the issue must be resolved by the fact finder.

. . . .

One last caution should be stated: The latitude given the Government in "inducing" the criminal act is considerably greater in contraband cases (drugs, liquor)—which are essentially "victimless" crimes—than would be permissible as to other crimes, where commission of the acts would bring injury to members of the public.

14 M.J. at 343–44 (footnotes omitted).

In determining the legal sufficiency of the trial court's finding of guilt, *"the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."* United States v. Hart, 25 M.J. 143, 146 (C.M.A.1987), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This court's statutory review authority is broader than that afforded most appellate courts as we may "weigh the evidence ... and determine controverted questions of fact differently from the court-martial." *United States v. Sikorski*, 45 C.M.R. 119, 122 (C.M.A.1972). In determining factual sufficiency, "the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

■ Utilizing the aforementioned criteria, we are not convinced that the defense of entrapment was disproved beyond a reasonable doubt. Agent Cunningham's testimony was contradicted on critical points by Palmer. Other witnesses corroborated the fact that Palmer had visited the appellant in his barracks on several occasions in the weeks prior to 5 April. Moreover, one of them supported the appellant's assertion that he had tried to avoid Palmer when the latter tried to contact him. Finally, Palmer clearly had a financial incentive to see that the appellant was apprehended. *See United States v. Hunter*, 21 M.J. 240 (C.M.A. 1986). Under some circumstances, possession of a sizeable cache of contraband may

---

1. The evidence on this point is disputed.

implicate a predisposition to sell. *See* Manual for Courts–Martial, United States, 1984, Part IV, para. 37 analysis, app. 21, at A21–95. However, that fact is lacking in the instant case. Possession of a small amount of hashish is insufficient to show predisposition to sell. *United States v. Venus*, 15 M.J. 1095 (A.C.M.R.1983); *see also United States v. Lubitz*, 34 M.J. 9 (C.M.A.1991) (summary disposition).

The findings of guilty and the sentence are set aside and the charges are dismissed.

Senior Judge JOHNSON and Judge GRAVELLE concur.