**UNITED STATES**

v.

**Airman Jason W. HALL, United States Air Force.**

**ACM 33476.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 18 Sept. 1998.

Decided 5 Feb. 2001.

Pecinovsky, J., filed opinion concurring in part and dissenting in part.

Appellate Counsel for Appellant: Colonel Theodore J. Fink and Captain Natasha V. Wrobel.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Melissa A. Burke.

Before YOUNG, Chief Judge, BURD, and PECINOVSKY, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Chief Judge:

In accordance with his pleas, the appellant was convicted of two specifications of assault and one specification of failure to obey an order. Articles 128 and 92, UCMJ, 10 U.S.C.

§§ 928, 892. Contrary to his plea, the appellant was convicted of wrongful distribution of a controlled substance. Article 112a, UCMJ, 10 U.S.C. § 912a. The convening authority approved the sentence adjudged by the court members: confinement for 12 months and reduction to E–1. The appellant claims the military judge erred by denying "the defense the right to call a material witness precluding the appellant from presenting a defense." We affirm.

 The military judge did not preclude the witness from testifying. The judge merely made evidentiary rulings excluding portions of his testimony. We suspect the appellant framed the issue as a denial of a material witness to get the benefit of a more stringent harmless error test. If we were to conclude that the military judge inappropriately denied a material and relevant defense witness, the appellant's conviction would have to be reversed unless we are convinced beyond a reasonable doubt that the error was harmless. *United States v. Miller*, 47 M.J. 352, 359–60 (1997). However, this Court reviews a trial judge's rulings to admit or exclude evidence for an abuse of discretion. *United States v. Ayala*, 43 M.J. 296, 298 (1995). *See United States v. Kindle*, 45 M.J. 284, 285 (1996) (holding standard of review for admissibility of out of court statement is whether judge abused his discretion). Although we are authorized to find facts under Article 66(c), 10 U.S.C. § 866(c), we normally defer to the military judge unless his findings are clearly erroneous. *See United States v. Vaughters*, 42 M.J. 564, 566 (A.F.Ct.Crim. App.1995), *aff'd*, 44 M.J. 377 (1996). We review his conclusions of law de novo. *Ayala*, 43 M.J. at 298. We may not reverse unless an error "materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a).

## I. Background

From defense counsel's opening statement, the defense admitted that the appellant provided steroids to Senior Airman (SrA) Stachum, a government agent. But, the defense counsel insisted the appellant was not guilty of a criminal offense because he was entrapped. The defense counsel alleged the idea to transfer the steroids originated with SrA Stachum and the appellant was not predisposed to commit the offense.

SrA Stachum testified that he was a member of the Security Forces and a reserve police officer with the Mountain Home Police Department. He met the appellant while performing his police duties both on and off base, but they came to know each other personally only when the appellant moved into the Security Forces dormitory where SrA Stachum lived. Both airmen were weightlifters and their relationship revolved around that mutual interest. They had numerous conversations about techniques, supplements, and even steroids. The appellant even loaned SrA Stachum a book on steroids. Ultimately, their conversations turned to obtaining steroids. According to SrA Stachum, the appellant said "he could probably connect me with a source." SrA Stachum contacted the Air Force Office of Special Investigations (AFOSI) about the appellant's interest in steroids, and the AFOSI opened an investigation. On cross-examination, SrA Stachum insisted that he had never asked the appellant to get him steroids and that the plan to obtain steroids originated with the appellant.

Airman (Amn) Hillhouse, another weightlifter, told the appellant that he intended to purchase steroids while on leave. The appellant said that he would want to get some if he had the money. Amn Hillhouse purchased $300–worth of steroids for his personal use while on leave in Washington, although he was unfamiliar with how to use them. Knowing, as did many others on base, that the appellant had used steroids before entering the Air Force, Amn Hillhouse took the steroids to the base and sought the appellant's advice on how to correctly use them. The appellant taught Amn Hillhouse how to inject himself with the steroids. After a little over two weeks, Amn Hillhouse became disillusioned with the steroids—he did not seem to be making any progress on adding muscle to his body and the steroids made him very irritable. He offered the remainder of the steroids to the appellant. The appellant told Amn Hillhouse he would pay $120 for the steroids. His plan was to sell the steroids to SrA Stachum with the under-

standing that he could use some of them during the first week after the sale. The appellant took the steroids and sold them to SrA Stachum for the same price.

When the appellant testified, he readily admitted using steroids before he entered the Air Force. He acknowledged selling the steroids to SrA Stachum, but claimed that he only transferred the steroids as a favor for two friends (Amn Hillhouse and SrA Stachum) and to get SrA Stachum to stop pestering him about steroids. He asserted that the idea to provide the steroids originated with SrA Stachum. On cross-examination, the appellant admitted he had offered to front SrA Stachum $20 to assist him in purchasing the steroids and that he intended to share the steroids with SrA Stachum. The appellant also conceded that he had lied to several of his supervisors about prior misconduct.

## II. Discussion

Airman First Class (A1C) Gilbert lived in the same dormitory as the appellant and SrA Stachum. The appellant called A1C Gilbert to testify that he had heard SrA Stachum ask the appellant "can you hook me up with steroids?" and that, prior to the appellant's apprehension, the appellant had complained on several occasions about SrA Stachum pestering him for steroids. The prosecution objected to the testimony as inadmissible hearsay, and the military judge held an Article 39(a) session to determine whether A1C Gilbert's testimony should be limited. During the Article 39(a) session, A1C Gilbert testified that he overheard SrA Stachum ask the appellant if he could "hook him up," but did not hear the word steroids. Immediately thereafter, however, the appellant complained to A1C Gilbert that SrA Stachum kept bugging him about steroids. The appellant complained on several other occasions to A1C Gilbert about SrA Stachum pestering him to get steroids.

The defense theory at trial was the statements were not hearsay because they were not offered for the truth of the matter asserted. Instead, the defense asserted the statements were admissible to impeach SrA Stachum by contradicting his testimony. The defense also claimed that the prosecution attacked the appellant's credibility during cross-examination and, therefore, A1C Gilbert's testimony was admissible under Mil. R.Evid. 801(d)(1)(B) to rebut a charge of recent fabrication.

The military judge permitted A1C Gilbert to testify, but limited his testimony. The military judge found the "can you hook me up" statement to have marginal relevance, but excluded it because it was too remote and lacked trustworthiness-the witness was not sure about what he heard and did not hear any other part of the conversation. The military judge ruled the appellant's statements to A1C Gilbert about SrA Stachum pestering him about getting him steroids were self-serving hearsay, and therefore, inadmissible.

Before this Court, the appellant reiterates his claim that the statements were not inadmissible hearsay. He again argues that the statements should be admitted, not for the truth of the matter asserted in the statements, but to contradict SrA Stachum's testimony. He now asserts that the appellant's statements to A1C Gilbert that SrA Stachum kept bugging him were admissible as expressions of the appellant's state of mind under Mil.R.Evid. 803.

Relevant evidence is generally admissible except as otherwise provided by law or the Military Rules of Evidence. Mil.R.Evid. 402. Evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil.R.Evid. 401. Of course, the military judge may exclude even logically relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Mil.R.Evid. 403.

The appellant contends he was entrapped into distributing the steroids. Entrapment is a defense to the offense of distribution of controlled substances. R.C.M. 916(g). *See United States v. Monroe*, 42 M.J. 398 (1995). The appellant has the initial burden of showing that a government agent

originated the suggestion to commit the offense. The burden then shifts to the prosecution "to prove beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense, 'prior to first being approached by Government agents.'" *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A.1992) (citations omitted). *Accord Monroe*, 42 M.J. at 402.

The Military Rules of Evidence do not expressly mention impeachment by specific contradiction. It is a common law mode of impeachment recognized in federal and military courts, and not governed by Mil.R.Evid. 608. *United States v. Sojfer*, 47 M.J. 425, 427 (1998) (citing *United States v. Toro*, 37 M.J. 313, 315 (C.M.A.1993)); *United States v. Perez–Perez*, 72 F.3d 224, 227 (1st Cir.1995). The rules of relevancy apply to methods of impeachment. *Sojfer*, 47 M.J. at 427.

■ Under the common law, a witness could not be impeached with extrinsic evidence of collateral facts. 1 John W. Strong et al., *McCormick on Evidence* § 45 (5th ed.1999). The same rule applies under the Military Rules of Evidence, but is normally couched in terms of Mil.R.Evid. 403. The military judge normally has "enormous leeway" in balancing the probative value of the evidence against the danger of unfair prejudice, confusion of the issues, or undue waste of time. *United States v. Baldwin*, 54 M.J. 551, 557 (A.F.Ct.Crim.App.2000) (Young, C.J., concurring) (citing Stephen A. Saltzburg et al., *Military Rules of Evidence Manual* 490 (4th ed.1984)). However, when impeachment by contradiction is logically relevant, it is presumptively admissible under Mil.R.Evid. 402. 1 Strong, *supra* at § 45.

■ A1C Gilbert's testimony, that SrA Stachum asked the appellant to hook him up, was logically relevant—it had a tendency to demonstrate that the suggestion to commit the offense originated with SrA Stachum and to contradict SrA Stachum's testimony that he never asked the appellant to get him steroids. It goes directly to the heart of the appellant's entrapment defense. Such testimony is neither remote, nor collateral. The military judge's conclusion that the evidence was untrustworthy was a matter better left

for the court members to assess. *See* Saltzburg, *supra* at 947.

■ A1C Gilbert's testimony that, immediately after SrA Stachum asked the appellant to hook him up, the appellant complained about SrA Stachum asking him to get steroids was admissible. During cross-examination of the appellant, the trial counsel questioned the appellant about previous lies to superiors and having a lot to lose in the court-martial. She suggested to court members that the appellant had a strong motive to testify falsely. Under these circumstances, A1C Gilbert's testimony describing the appellant's statement was not hearsay, but a prior consistent statement offered to rebut a motive to misrepresent. Mil.R.Evid. 801(d)(1)(B). The appellant's statement to A1C Gilbert also described his state of mind. Although the appellant did not seek admission at trial on this ground, the statement would have been admissible as an exception to the hearsay rule. Mil.R.Evid. 803(3). The fact that the statement was self-serving is not a grounds to bar admission under the rule. *United States v. Benson*, 48 M.J. 734, 741 (A.F.Ct.Crim.App.1998).

■ Although the military judge erred in refusing to admit this evidence, this error does not warrant reversal of the appellant's conviction. The appellant's own testimony established beyond a reasonable doubt not just that he had a predisposition to use steroids, but also that he had a predisposition to distribute the steroids. The appellant freely admitted wanting to purchase the steroids from A1C Gilbert for his own personal use, but not having the money to do so. Transferring the steroids from A1C Gilbert to SrA Stachum was the means by which the appellant would accomplish his goal-getting steroids for his own personal use. He even offered to front SrA Stachum $20 of the purchase price to make sure SrA Stachum made the purchase. Under these circumstances, the military judge's suppression of A1C Gilbert's testimony was harmless error. Article 59(a), UCMJ.

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. According-

ly, the findings and sentence are AF-FIRMED.

PECINOVSKY, Judge (concurring in part and dissenting in part):

I concur that the military judge erred in refusing to admit the testimony of A1C Gilbert concerning whether SrA Stachum asked appellant to provide him with steroids. A1C Gilbert would have testified that he overheard SrA Stachum ask appellant if he could "hook him up." Such testimony should have been admitted to impeach the testimony of SrA Stachum that he never asked appellant to provide him with steroids.

In addition, A1C Gilbert should have been permitted to testify that appellant complained to A1C Gilbert that SrA Stachum kept bugging appellant about obtaining steroids. A1C Gilbert's testimony would not have been hearsay, but, rather, would have constituted a prior consistent statement offered to rebut a motive to misrepresent, as well as a description of appellant's state of mind.

However, I dissent from the majority's conclusion that the military judge's suppression of A1C Gilbert's testimony was harmless error. The majority states that the testimony of the appellant established beyond a reasonable doubt that appellant had a predisposition to commit the offense. This would be true for the offense of use or possession of steroids. However, appellant was charged with and found guilty of the distribution of steroids. Our superior court has held that evidence of use or possession of drugs to show predisposition to sell drugs is "questionable." *United States v. Wind,* 28 M.J. 381, 382–83 (C.M.A.1989) ("Many people who possess or use drugs never sell them; and so some courts have held that, if an accused is tried for selling drugs and asserts an entrapment defense, evidence of his prior use or possession is inadmissible to establish his predisposition." *See, e.g., United States v. Watson,* 489 F.2d 504 (3d Cir.1973); *United States v. Ewbank,* 483 F.2d 1149 (9th Cir. 1973); *United States v. Venus,* 15 M.J. 1095 (A.C.M.R.1983)).

The majority correctly notes that appellant used steroids prior to coming into the Air Force. However, no evidence was admitted to indicate that appellant had ever distributed steroids prior to his entry into the Air Force. Such evidence of a prior incident of drug distribution by appellant would have been admissible under Mil.R.Evid. 404 to show why the government witness approached appellant to buy drugs and to rebut any suggestion that appellant was entrapped by that same government witness. *See United States v. Acosta,* 49 M.J. 14, 19 (1998).

It is clear from the record of trial that appellant was in possession of a small amount of anabolic steroids. However, possession of a small amount of illegal drugs is insufficient to show predisposition to sell. *See United States v. Hunt,* 34 M.J. 765, 768 (A.C.M.R.1992); *United States v. Venus,* 15 M.J. 1095 (A.C.M.R.1983); *United States v. Lubitz,* 34 M.J. 9 (C.M.A.1991) (summary disposition).

Although not mentioned by the majority, appellant's possession of an anabolic steroid guide may be considered evidence of a predisposition to use or possess steroids. Appellant testified that he acquired the guide through an ad in *Muscle* magazine and used it to write a paper on the pros and cons of the use of steroids. Appellant certainly knew how to use steroids and did use them prior to entering the Air Force.

Similarly, the seizure of the gel caps and the syringes may be evidence of a predisposition to use steroids. According to the immunized testimony of Amn Hillhouse, appellant purchased the gel caps and syringes along with the steroids during the controlled buy on 9 July 1998. However, the controlled buy did not take place until after the suggestion of the purchase was first raised either by the appellant or SrA Stachum.

Appellant admitted that he would have purchased steroids for his own use had he the money to do so. As with his pre-Air Force use of steroids, this testimony simply evidences appellant's predisposition to possess and use steroids, not to distribute them. The majority notes that even when appellant distributed the steroids to SrA Stachum, he did so for the purpose of being able to use some of them himself. I disagree with the

majority's statement that the testimony of the appellant established beyond a reasonable doubt that appellant had a predisposition to commit the offense of distribution of steroids. Appellant had the predisposition to possess and use steroids. The appellant, by his own admission, wanted to use steroids. However, the issue of whether the appellant had a predisposition to distribute steroids is not established beyond a reasonable doubt by the testimony of appellant, given the impeaching nature of A1C Gilbert's testimony to the statements concerning inducement by the government agent, SrA Stachum.

The defense of entrapment arises when "the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." Rule for Courts–Martial (R.C.M.) 916(g). At trial, the question of appellant's predisposition to distribute had, as its focus, the question of who first raised the issue of the purchase of the steroids by appellant for SrA Stachum. Appellant testified that SrA Stachum continually asked him to provide him with steroids. SrA Stachum testified that he never asked appellant to provide steroids.

Due to the suppression of A1C Gilbert's testimony, the crucial issue in the case rested upon a swearing contest by appellant and SrA Stachum. In trial counsel's closing argument, he emphasized that, when comparing the testimony of appellant and SrA Stachum, the only credible evidence is SrA Stachum telling the court members the truth and the idea to sell the steroids began with the appellant. Entrapment questions frequently turn on the factfinders' assessment of witness credibility. *See United States v. Collier*, 1 M.J. 358 (C.M.A.1976); *United States v. Jursnick*, 24 M.J. 504 (A.F.C.M.R.1987); *United States v. O'Donnell*, 22 M.J. 911 (A.F.C.M.R.1986). Here, the members rejected the entrapment defense, apparently believing the testimony of the government agent over that of the accused. The testimony of A1C Gilbert, impeaching the testimony of SrA Stachum and corroborating appellant's testimony, in the words of the majority opinion, "goes directly to the heart of the appellant's entrapment defense." Given the importance of such evidence, I cannot concur with the majority's conclusion that "the military judge's suppression of A1C Gilbert's testimony was harmless error" under Article 59(a), UCMJ.

The military judge erred in suppressing the testimony of A1C Gilbert, which went "to the heart of the appellant's entrapment defense." This error "materially prejudice[d] the substantial rights of the accused." Article 59(a), UCMJ. Given the crucial nature of this evidence to the issue of whether appellant had a predisposition to distribute steroids or whether he was entrapped by the actions of a government agent, the suppression of such evidence constituted harmful error.

Additionally, in reviewing the record for factual sufficiency, I am not convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). The majority has held that the testimony of A1C Gilbert was erroneously suppressed. A review of the record, pursuant to Article 66(c), UCMJ, 10 U.S.C. § 816, necessarily includes a review of the admitted evidence, as well as the erroneously suppressed evidence, to determine factual sufficiency. Although *Turner* and Article 66(c) do not address the issue of what constitutes a "record," *Turner* is clear that, pursuant to the factfinding power conferred upon a service court of appeals, Article 66(c) "requires that court to evaluate not only the sufficiency of the evidence but also its weight." *Turner*, 25 M.J. at 325. Therefore, where this court has held that evidence was erroneously suppressed at trial, it is required for this court to make "an explicit finding as to whether from their review of the record [including the suppressed evidence] they are convinced beyond a reasonable doubt of appellant's guilt." *See id.* I am not convinced of guilt beyond a reasonable doubt.

Finally, the majority analyzes this case under an abuse of discretion standard, rather than applying the "harmless error beyond a reasonable doubt" due errors rising to a constitutional level. The majority concedes that "[i]f we were to conclude that the military judge inappropriately denied a material and relevant defense witness, the appellant's con-

viction would have to be reversed unless we are convinced beyond a reasonable doubt that the error was harmless. *United States v. Miller*, 47 M.J. 352, 359–60 (1997)." In *Miller*, our superior court relied upon their earlier decision in *United States v. Brown*, 41 M.J. 1, 4 (C.M.A.1994), in which the court set forth the standard as to when to apply the "beyond a reasonable doubt" standard to a harmless error analysis. In *Brown*, the court found that the military judge's erroneous evidentiary ruling precluded appellant from presenting a defense based on evidence of pertinent character traits under Mil. R.Evid. 404(a)(1). *Id.* The court emphasized that "[t]his was an error of Constitutional dimension, *going to the heart of appellant's defense.* We are unable to conclude beyond a reasonable doubt that the error was harmless." *Brown*, 41 M.J. at 4. (emphasis added).

Just as the denial of a material witness (*Miller*) or prevention from introducing evidence of pertinent character traits (*Brown*) constitute errors of Constitutional dimension, here, the erroneous suppression of vital testimony of A1C Gilbert, goes "to the heart of the appellant's entrapment defense." *See Brown*, 41 M.J. at 4. Such an error is, therefore, "an error of Constitutional dimension" requiring this court to determine whether "beyond a reasonable doubt ... the error was harmless." *Id.* Applying the proper standard of harmful error beyond a reasonable doubt, I would hold that the erroneous suppression of the testimony is not harmless beyond a reasonable doubt.

I, thereby, respectfully dissent and would reverse the conviction for distribution of steroids.