UNITED STATES, Appellee

V.

Jason W. HALL, Airman
U.S. Air Force, Appellant

No. 01-0418

Crim. App. No. 33476

_____

United States Court of Appeals for the Armed Forces

Argued October 25, 2001

Decided May 2, 2002

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and BAKER, J., joined.  SULLIVAN, S.J.,
filed an opinion concurring in part and in the result.
EFFRON, J., filed a dissenting opinion.

Counsel

For Appellant:  Major Maria A. Fried (argued); Lieutenant Colonel
    Beverly B. Knott and Lieutenant Colonel Timothy W. Murphy
    (on brief); Colonel James R. Wise and Major Stephen P. Kelly.

For Appellee:  Captain Christa S. Cothrel (argued); Colonel
    Anthony P. Datillo and Major Lance B. Sigmon (on brief);
    Major Bryan T. Wheeler and Major Linette I. Romer.

Military Judge:  Gregory E. Michael


  **This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial convicted appellant, pursuant to his pleas, of assault consummated by a battery (two specifications) and dereliction of duty, in violation of Articles 128 and 92, Uniform Code of Military Justice, 10 USC §§ 928 and 892, respectively.  Contrary to his pleas, the court-martial, composed of officer and enlisted members, convicted appellant of unlawful distribution of anabolic steroids, in violation of Article 112a, UCMJ, 10 USC § 912a.  The adjudged and approved sentence provides for confinement for twelve months and reduction to the lowest enlisted grade.  The Court of Criminal Appeals affirmed the findings and sentence.  54 MJ 788 (2001).  This Court granted review of the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION WHEN IT HELD THAT ALTHOUGH THE MILITARY JUDGE ERRED IN HIS DECISION NOT TO ADMIT A1C GILBERT'S TESTIMONY, THE ERROR WAS HARMLESS BEYOND A REASONABLE DOUBT.

For the reasons set out below, we affirm.

## Factual Background

The factual issue in this case was entrapment.  The excluded testimony of Airman First Class (A1C) Richard Gilbert was offered in support of appellant's entrapment defense.

Senior Airman (SrA) Donald Stachum, an Air Force Security Policeman, testified that he and appellant lived in the same dormitory.  Both Stachum and appellant were interested in weight lifting.  They had conversations about certain professional weight lifters who used steroids and the effects they experienced.  Appellant showed Stachum a "steroid handbook" and told him that he had learned a lot about steroid use from the

book.  Appellant offered to loan the book to Stachum, and Stachum accepted.

Stachum testified that sometime in mid-June 1998, appellant told him that he was "really cool" and offered to "connect [him] with a source."  Stachum testified that he never asked appellant to sell steroids to him.  Stachum reported appellant's offer to an agent of the Office of Special Investigations (OSI).

Stachum testified that around the end of June, appellant told him that he had a friend who might be able to obtain some steroids for him.  Stachum reported this conversation to the OSI. The OSI told Stachum to keep them informed.

Around the first of July, appellant told Stachum that his friend was probably willing to sell the steroids, but he was hesitant and did not want to get into trouble.  Stachum told appellant to let him know if the friend wanted to make the sale. Stachum reported this conversation to the OSI.  On about July 8, the OSI arranged for Stachum to make a controlled buy.

Stachum testified that on the afternoon of July 8, he asked appellant if he had talked to his friend.  Appellant responded that he would talk to his friend on the following morning.  At about 4:30 p.m. on July 9, appellant told Stachum, "[I]f you want to buy the steroids, it has to happen at 1900 hours tonight." Appellant told Stachum that "[h]is friend was extremely paranoid, wanted to get rid of it, and didn't want to use it anymore." Stachum testified that he tried to postpone the transaction until the following morning, but appellant insisted "no, if it's going to happen, it has to happen tonight."  Appellant wanted to conduct the transaction in the dormitory, and he wanted Stachum

3

to "take a shot of the steroids to prove that [he] wasn't going to bust him."

The OSI told Stachum that the transaction could not be in the dormitory, because they would be unable to keep constant surveillance. Stachum told appellant that he did not want to conduct the transaction on base, that he did not trust him, and that he felt more comfortable off base.

Stachum testified that appellant told him he wanted to use the steroids with him for a week. Stachum replied that he would bring them to the dormitory but would not leave them in his dormitory room. Appellant reiterated that he wanted Stachum to "take a shot" immediately after the transaction. Stachum testified that appellant told him one of the conditions for the transaction was that appellant could use them.

The transaction ultimately took place off-base, behind a church, where Stachum purchased the steroids with $120 in marked money. As Stachum and appellant drove toward the base, Stachum signaled the OSI. The OSI surrounded their vehicle, ordered both appellant and Stachum to get out of the vehicle, and handcuffed them.

A1C Phillip Hillhouse, a close friend of appellant, was the source of the steroids. He testified that he purchased them in his hometown. He testified that when he told appellant he intended to buy some steroids, appellant indicated that "if he had money, he would probably want me to buy some." Hillhouse qualified the last statement, testifying, "I don't have the 100% prove [sic] on that though."

4

Hillhouse had only "basic knowledge" about steroid use, but found that appellant was "very knowledgeable." Appellant verified that Hillhouse had purchased the correct size syringes, and he showed Hillhouse how to correctly inject himself with the steroids.

After using steroids for about two-and-a-half weeks, Hillhouse became "totally disgusted" with what he was doing to himself and decided to get rid of them. He offered to sell them to appellant. According to Hillhouse, "obviously he wanted them." Appellant offered to buy them and suggested a price of $120. Hillhouse agreed.

Appellant did not pay Hillhouse for the steroids immediately. Hillhouse did not know how appellant intended to obtain the money to buy the steroids, and he did not know if appellant intended to sell them. He understood that appellant wanted the steroids for personal use.

Appellant admitted being knowledgeable about steroids. He also admitted using steroids before joining the Air Force and admitted that he did not reveal his steroid use on his enlistment application.

Appellant testified that he met Stachum shortly after he moved into the security police dormitory. During the first month of his acquaintance with Stachum, they talked about weight lifting and body building, including use of steroids. Appellant testified that about a month after he moved into the dormitory, Stachum asked him if he "could hook him up with some drugs." Appellant responded that he did not know where to obtain them. Appellant testified that after that conversation, Stachum asked

him about obtaining steroids in "probably almost every conversation." He testified that Stachum's initial requests did not bother him, but after a while, they became annoying, because he "had already told him no."

Appellant testified that after Hillhouse told him that he wanted to get rid of his steroids, appellant told Stachum that he could get him some steroids if he wanted them. Asked why he made the offer to Stachum, appellant responded, "To get him off my back and to do a favor for two friends."

On cross-examination, appellant corroborated Stachum's testimony that he insisted on completing the transaction on the evening of July 9. He admitted offering to "front part of the cost" of the drugs when Stachum said he did not have enough money. He admitted telling Hillhouse that he intended to share the steroids with Stachum.

Regarding his intent to share the steroids, appellant testified on cross-examination as follows:

> Q. Okay. And before you left, you told [Hillhouse] that you and Donnie [Stachum] were going to use the drugs that night? Isn't that true?
>
> A. Yes, ma'am.
>
> Q. Because you intended on using those drugs, didn't you?
>
> A. Yes, ma'am.
>
> Q. And, in fact, part of the deal that you were getting out of this is that Airman Stachum would keep the drugs for you, and he would be able to provide them for you whenever you wanted to use them. Isn't that true?
>
> A. For one week, ma'am.

Q. Right. And Airman Stachum would be the one who would actually have to have possession of them, isn't that true?

A. Yes, ma'am.

Q. So, then if for some reason the drugs were found, Airman Stachum--they would be in Airman Stachum's possession, isn't that true?

A. Yes, ma'am.

Q. And the whole time you intended on using those drugs. Isn't that true?

A. Yes, ma'am.

Q. So, part of the reason why you sold those drugs to Airman Stachum was so that you could use them. Isn't that true?

A. Yes, ma'am.

*   *   *

Q. And, in fact, after the transaction had finally taken place, on the way back to the gate, you told Airman Stachum that you guys were going to use the drugs that night. Isn't that true?

A. Yes, ma'am.

Q. Because that is the reason why you wanted this to go down was so you could use the drugs, isn't that true?

A. Yes, ma'am.

*   *   *

Q. Okay. Now, when you obtained those drugs from Airman Hillhouse, you were taking a pretty big risk, weren't you?

A. Yes, ma'am.

Q. Because you knew [Stachum] was a cop, right?

A. Yes, ma'am.

Q. And you did it because you were going to use those drugs, right?

A. In part, yes, ma'am.

7

A1C Richard Gilbert, appellant's friend and co-worker, was called as a defense witness. At an evidentiary hearing conducted in accordance with Article 39(a), UCMJ, 10 USC § 839(a), the defense established that Gilbert would testify as follows:

> I heard Airman Stachum ask Airman Hall, "can you hook me up." And that's all I heard. Then Airman Hall came out and said, "he keeps bugging me for steroids."

When asked when this conversation occurred, Gilbert responded, "Can't be specific, but I'd say between March and April." Gilbert also testified that appellant mentioned three or four times that Stachum kept "bugging him for steroids." In response to a question from the military judge about the context of the conversation between Stachum and appellant, Gilbert testified, "That's all I remember hearing, sir."

The military judge sustained a prosecution objection to Gilbert's testimony. He ruled that the statement about "hooking him up" was too remote and not trustworthy because Gilbert did not hear what else was said. Regarding appellant's complaint that Stachum was "bugging" him for steroids, the military judge ruled that it was "self-serving hearsay."

The Court of Criminal Appeals held that the military judge erred. The court held that Gilbert's testimony that Stachum asked appellant to "hook him up" was relevant to show that the suggestion to commit the offense originated with Stachum and to contradict Stachum's testimony that he never asked appellant to obtain drugs for him. The court further held that appellant's complaints about Stachum "bugging" him were admissible as prior consistent statements under Mil.R.Evid. 801(d)(1)(B) and as evidence of appellant's state of mind under Mil.R.Evid. 803(3),

Manual for Courts-Martial, United States (2000 ed.).[1]  The court

held, however, that the error was harmless because "appellant's

own testimony established beyond a reasonable doubt not just that

he had a predisposition to use steroids, but also that he had a

predisposition to distribute the steroids."  The court reasoned:

> Transferring the steroids from A1C [Hillhouse] to SrA
> Stachum was the means by which appellant would
> accomplish his goal--getting steroids for his own
> personal use.  He even offered to front SrA Stachum $20
> of the purchase price to make sure SrA Stachum made the
> purchase.[2]

54 MJ at 792.

One judge dissented from the lower court's holding of

harmless error, concluding, as did the majority, that the

excluded testimony of A1C Gilbert went to the heart of

appellant's entrapment defense.  The dissenting judge concluded

that the evidence showed appellant's predisposition to possess

and use steroids, but did not establish his predisposition to

distribute them.  The dissenting judge was not satisfied beyond a

reasonable doubt that the erroneous suppression of Gilbert's

testimony was harmless.  Id. at 793.

## Discussion

Before this Court, the Government has not challenged the

correctness of the decision below regarding the admissibility of

Gilbert's testimony.  Thus, the sole issue before us is whether

---

[1]All cited provisions from the Manual are unchanged from those in
effect at the time of appellant's court-martial.

[2] The court below erroneously referred to A1C Gilbert as the
source of the steroids instead of A1C Hillhouse.

the court below correctly determined that any error in excluding Gilbert's testimony was harmless beyond a reasonable doubt.

Appellant asserts that because this case involved a swearing contest between Stachum and himself, excluding evidence relating to Stachum's credibility was an unconstitutional denial of the right to present an entrapment defense. He argues that the excluded portion of Gilbert's testimony would have corroborated his entrapment defense, and that there was a reasonable likelihood that Gilbert's testimony would have tipped the balance in his favor.

The Government argues that the exclusion of Gilbert's testimony was an evidentiary error that did not prevent appellant from presenting his entrapment defense. The Government further argues that appellant's own testimony "provided such clear evidence as to his predisposition that it virtually eliminated any entrapment defense." Thus, the Government asserts that, even if the error was of constitutional magnitude, it was harmless beyond a reasonable doubt.

We review the lower court's harmless-error analysis de novo. See United States v. Grijalva, 55 MJ 223, 228 (2001) (de novo review of constitutional error); United State v. Gunkle, 55 MJ 26, 30 (2001) (de novo review of nonconstitutional error). For constitutional errors, the Government must persuade us that the error was harmless beyond a reasonable doubt. United States v. Adams, 44 MJ 251, 252 (1996), citing Chapman v. California, 386 U.S. 18, 24 (1967). For nonconstitutional errors, the Government must persuade us that the error did not have "a substantial

influence on the findings."  Id., citing Kotteakos v. United States, 328 U.S. 750, 764-65 (1946).

Entrapment is an affirmative defense.  RCM 916(g), Manual, supra, provides: "It is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense."  In United States v. Whittle, 34 MJ 206, 208 (CMA 1992), this Court explained the burden of proof in entrapment cases as follows:

> The defense has the initial burden of going forward to show that a government agent originated the suggestion to commit the crime.  Once the defense has come forward, the burden then shifts to the Government to prove beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense, United States v. Vandzandt, [14 MJ 332, 342-43 (CMA 1982)], "prior to first being approached by Government agents." Jacobson v. United States, [503 U.S. 540, 549 (1992)].

In United States v. Howell, 36 MJ 354, 359-60 (CMA 1993), this Court, quoting United States v. Stanton, 973 F.2d 608, 610 (8th Cir. 1992), explained that the first element of entrapment is an inducement by government agents to commit the crime.  This Court adopted the Stanton definition of an "inducement":

> Inducement is government conduct that "creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." . . . Inducement may take different forms, including pressure, assurances that a person is not doing anything wrong, "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." . . . Inducement cannot be shown if government agents merely provide the opportunity or facilities to commit the crime or use artifice and strategem.

(Citations and emphasis omitted.) This Court also explained that a government agent's repeated requests for drugs "do not in and of themselves constitute the required inducement." Id. at 360.

In United States v. Wind, 28 MJ 381, 382 (CMA 1989), this Court observed that evidence of drug possession or use to show predisposition to sell drugs is "questionable," because "[m]any people who possess or use drugs never sell them." However, this Court has stopped short of holding that possession or use of drugs is never, under any circumstances, relevant to show predisposition to distribute drugs.

A ruling excluding evidence is not constitutional error unless the evidence is "material or vital." United States v. Ndanyi, 45 MJ 315, 321-22 (1996); United States v. Garcia, 44 MJ 27, 31, cert. denied, 519 U.S. 865 (1996). Exclusion of evidence impeaching a key witness may be constitutional error if there is a "reasonable likelihood that the excluded evidence may have tipped the credibility balance in appellant's favor." United States v. Bins, 43 MJ 79, 87 (1995); see also United States v. Dorsey, 16 MJ 1, 7 (CMA 1983) (exclusion of evidence of motive to lie is constitutional error). The lower court treated the error in this case as constitutional error. We need not decide whether the lower court correctly characterized the error, because we are satisfied that the error was harmless beyond a reasonable doubt.

We evaluate prejudice from an erroneous evidentiary ruling under the four-pronged test set out in United States v. Weeks, 20 MJ 22, 25 (CMA 1985). We weigh (1) the strength of the Government's case; (2) the strength of the defense case; (3) the

12

materiality of the evidence in question; and (4) the quality of
the evidence in question.

On the issue of entrapment, the Government's evidence was
strong.  The factual issue raised by appellant's entrapment
defense was whether appellant was predisposed to facilitate a
transfer of the drugs from Hillhouse to Stachum in order to
ensure a no-cost supply of steroids for his own use.  In this
case, the Government was not required to show that appellant was
generally predisposed to sell drugs, but only that he was
predisposed to facilitate this particular transaction.
Hillhouse's testimony established that appellant was interested
in obtaining steroids but had no money to buy them.  Hillhouse's
testimony also established that appellant offered to dispose of
the steroids for him.  Appellant's testimony indicated that he
resisted whatever requests Stachum may have made for steroids,
because he had no readily available source until Hillhouse
approached him.  Appellant's testimony on cross-examination
established that appellant saw Hillhouse's desire to dispose of
the steroids as an opportunity to obtain a source for his own use
without having to pay for them.

In light of appellant's own testimony establishing his
predisposition to facilitate the transfer of Hillhouse's steroids
to Stachum, which was corroborated by Hillhouse's testimony and
the uncontested portions of Stachum's testimony, we hold that any
error in excluding portions of Gilbert's testimony was harmless
beyond a reasonable doubt.  Thus, we hold that the court below
did not err.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

<u>United States v. Hall</u>, No. 01-0418,AF

    SULLIVAN, Senior Judge (concurring in part and in the result):

    To the extent that the majority suggests we are precluded from looking at the holding of the Court of Criminal Appeals that error occurred, I disagree.  We granted review of the question of harmless error, which under our precedent allows us to look at the question of error  See <u>United States v. Williams</u>, 41 MJ 134, 135 n.2 (CMA 1994), citing <u>Christianson v. Colt Industries Operating Corp.</u>, 486 U.S. 800, 817 (1988).  Moreover, we have not adopted a strict appellate waiver approach when an appellant fails to challenge an adverse Court of Criminal Appeals holding in this Court.  <u>See</u> <u>generally</u> Eugene R. Fidell, <u>Guide to the Rules of Practice and Procedure for the United States Court of Appeals for the Armed Forces</u>, 34-37 (9th ed. 2000)(recognizing this Court's practice of specifying issues not assigned by appellate defense counsel);  <u>see</u> <u>also</u> <u>United States v. Johnson</u>, 42 MJ 443, 446 (1995).  Finally, I am not convinced that the law of the case, rather than appellate forfeiture with a plain error exception, is the proper approach to these questions.  <u>See</u> <u>generally</u> <u>United States v. Castillo</u>, 179 F.3rd 321, 326-27 (5th Cir. 1999); <u>Crocker v. Piedmont Aviation, Inc.</u>, 49 F.3rd 735, 739-40 (D.C. Cir. 1995).

    In my view, error occurred in this case for the reasons posited by the Court of Criminal Appeals.  Nevertheless, I agree

United States v. Hall, No. 01-0418/AF

with the majority that such error was harmless beyond a reasonable doubt.

Whether Airman Stachum induced appellant to commit the charged offense, and Stachum's credibility in this regard, were not outcome determinative issues in this case.  As pointed out by the majority, an additional requirement for a successful entrapment defense was a showing of an absence of a predisposition on appellant's part to commit the charged offense.  See RCM 916(g), Manual for Courts-Martial, United States (1998 ed.).

I agree with the majority opinion that there was overwhelming evidence of appellant's predisposition to acquire drugs from A1C Hillhouse in this case.  In these circumstances, there was no reasonable possibility that the members would find the second prerequisite of this defense existed in appellant's case.  Accordingly, I conclude that error in excluding defense evidence on Stachum's purported inducement of appellant and Stachum's credibility was harmless beyond a reasonable doubt. See United States v. Monroe, 42 MJ 398, 402-03 (1995).

United States v. Hall, No. 01-0418/AF

EFFRON, Judge (dissenting):

As the Court of Criminal Appeals noted, the military judge erroneously excluded testimony that went "directly to the heart of the appellant's entrapment defense."  54 MJ 788, 792 (2001). The court concluded that the error was not prejudicial under Article 59(a), UCMJ, 10 USC § 859(a).  Id.  The sole issue before us in the present appeal is the question of prejudice. The majority opinion concludes that any error was harmless beyond a reasonable doubt.  __ MJ at (12).  I respectfully dissent.

As our Court has emphasized, "an accused has a tough row to hoe to secure acquittal by virtue of entrapment because '[a] law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes.'"  United States v. LeMaster, 40 MJ 178, 180 (CMA 1994) (quoting United States v. Whittle, 34 MJ 206, 208 (CMA 1992)).  That task becomes particularly daunting if the military judge denies the accused the opportunity to present evidence that goes "to the heart" of his or her entrapment defense.

In an entrapment case, the determination as to whether an accused was entrapped is a subjective inquiry that "must be resolved by the fact finder."  United States v. Vanzandt, 14 MJ

332, 343 (CMA 1982). The issue of entrapment "involves balancing the accused's resistance to temptation against the amount of government inducement." Id. at 344. Because this is a factual issue, our resolution of the present appeal does not turn on whether we would believe appellant's version of the events, see United States v. Wells, 52 MJ 126, 131 (1999), or whether the evidence was sufficient as a matter of law. Compare Jackson v. Virginia, 443 U.S. 307, 319 (1979). The issue we must resolve is "whether the error had a substantial influence on the findings." United States v. Adams, 44 MJ 251, 252 (1996) (articulating standard for nonconstitutional errors) (citations omitted); see also United States v. Jefferson, 13 MJ 1, 4 (CMA 1982) (test for harmless error under constitutional standard is "whether 'evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice.'") (citation omitted).

The majority opinion contends that the Government's evidence was "strong" on the question of entrapment, relying principally on the claim that "Hillhouses's testimony established that appellant was interested in obtaining steroids but had no money to buy them," to show predisposition. ___ MJ at

2

(13). The majority opinion also relies on the contention that appellant's testimony demonstrates that he resisted Stachum's repeated requests for steroids only because he did not have a source to supply Stachum until Hillhouse approached him. Id. The evidence, however, raises more than a reasonable doubt on a number of key points.

First, with respect to Hillhouse, who testified under a grant of immunity, his testimony is quite ambiguous on the issue of whether -- at the time of the controlled buy or any other time -- appellant was interested in buying steroids but had no money to do so. On direct examination, Hillhouse testified as follows:

> Q: Before you left for Washington, did you ever have a conversation with the accused about steroids?
>
> A: Quite frequently.
>
> Q: What were these conversations about?
>
> A: They were just basic questions and basic conversations to the effect that do you know the pros and cons--pretty much what they [steroids] can do for you.
>
>             *   *   *
>
> Q: Did you ever have a conversation with him about what you were going to do when you go to Washington?
>
> A: The only thing I would be able to recall is I would attempt to purchase them

3

> [steroids].  I by no means knew for sure if
> I was going to.
>
> Q: So, you told the accused that you were
> going to try to buy some steroids?
>
> A: Yes.
>
> Q: And what did he say in response to that?
>
> A: <u>Really not too much.  And if he had
> money, he would probably want me to buy
> some.  I don't have the 100% prove [*sic*] on
> that though</u>.

(Emphasis added.)  This testimony does not establish beyond a reasonable doubt that appellant lacked sufficient funds to purchase steroids.  At most, it indicates that appellant may not have had the necessary funds prior to the time Hillhouse purchased the steroids on June 16 while in Washington state. The testimony does not directly address appellant's ability to purchase the steroids on July 9, the date of the controlled buy.[*]

Second, appellant's testimony does not establish beyond a reasonable doubt that his resistance to Stachum's inducement was based solely on the fact that he did not have a source to

---

[*] It is noteworthy as well that appellant did not testify as to his ability (or inability) to pay the $120 to purchase Hillhouse's leftover steroids, nor did trial counsel inquire about this matter on cross examination.  Moreover, trial counsel did not proffer any other evidence on this point.  Equally telling is the fact the Government's brief does not rely on appellant's purported inability to pay to show predisposition.  <u>See</u> Government Brief at 15 (arguing only that appellant was motivated by a desire "to obtain [steroids] for his own use").  As defense counsel noted in his closing argument at trial, "There's no evidence that Airman Hall couldn't have gone out and bought those steroids just for himself."

4

fulfill Stachum's request.  Although such a conclusion is one possible inference that could be drawn from the evidence, appellant's testimony does not establish this fact beyond a reasonable doubt.  The Government did not prove that, absent Stachum's three-month campaign of inducement, or prior thereto, appellant nonetheless would have engaged in the criminal conduct for which he was convicted, illegal distribution of steroids, in order to obtain steroids for his own personal use.  See Jacobson v. United States, 503 U.S. 540, 549 n.2 (1992).

Appellant's admission that he sold the steroids in part so that he could use them is not dispositive.  See United States v. Eckhoff, 27 MJ 142, 144 (CMA 1988) (holding "that a profit motive does not automatically negate an entrapment defense").  Accordingly, a drug user who is motivated in part by a desire to use drugs, or who otherwise benefits from a transaction, does not forfeit the entrapment defense.  The prosecution must still demonstrate that such a person would have acted in the absence of the Government's inducement or conceived the idea "prior to first being approached by Government agents."  United States v. Howell, 36 MJ 354, 358 (CMA 1993) (quoting Jacobson, supra at 549) (emphasis added).

Consistent with this requirement, we have acknowledged that profit motive may be considered as one factor in determining

5

whether an accused was predisposed to commit the charged crime, but we have not held that the presence of such motive precludes the defense. See, e.g., United States v. Cooper, 35 MJ 417, 425 (CMA 1992) (profit motive identified as one of five factors to show predisposition); United States v. Bell, 38 MJ 358, 360 (CMA 1993) ("unquestionably, the entrapment defense was raised by appellant's own testimony," though appellant profited from transaction); United States v. Bailey, 21 MJ 244, 245 (CMA 1986) (guilty plea improvident and entrapment defense raised where appellant gained profit from illegal distribution). In Howell, supra, we relied upon federal civilian opinions that have similarly identified profit motive as one among several factors that may be considered when assessing predisposition. See United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir. 1983) (identifying five "factors relevant in determining predisposition," including character, whether the Government first suggested the illegal conduct, and profit motive); United States v. Skarie, 971 F.2d 317, 320 (9th Cir. 1992) (same); see also United States v. Martinez, 122 F.3d 1161, 1163 (9th Cir. 1997) (holding "none of [five] factors is controlling" as to predisposition, including profit motive); United States v. Miller, 71 F.3d 813, 816 (11th Cir. 1996) (noting prior decisions have "refused to enumerate a list of factors to address when a

defendant's predisposition is at issue because the inquiry ... is necessarily ... fact-intensive").

The predicate factual issue in this case is whether the Government's inducement set off the chain of events which led to appellant's participation in the sale of steroids on July 9, the resolution of which includes assessing whether appellant sufficiently "resist[ed] ... temptation against the amount of government inducement" to warrant acquittal.  Vanzandt, 14 MJ at 344.  The Court of Criminal Appeals held that Gilbert's testimony was admissible as a prior consistent statement to rebut the Government's attack on appellant's truthfulness on cross-examination, as evidence of appellant's state of mind, and to impeach Stachum, who claimed never to have asked appellant for steroids.  All of these reasons constitute factors that bear directly upon the issue of appellant's predisposition.  As the members were presented only with the testimony of appellant and Stachum on the entrapment question, resolution of this question turned entirely on credibility.  Under these circumstances, the exclusion of Airman Gilbert's testimony was prejudicial because it deprived the defense of the opportunity to have the credibility question resolved by the members.