EFFRON, Judge
(dissenting):
As the Court of Criminal Appeals noted, the military judge erroneously excluded testimony that went “directly to the heart of the appellant’s entrapment defense.” 54 MJ 788, 792 (2001). The court concluded that the error was not prejudicial under Article 59(a), UCMJ, 10 USC § 859(a). Id. The sole issue before us in the present appeal is the question of prejudice. The majority opinion concludes that any error was harmless beyond a reasonable doubt. 56 MJ at 437. I respectfully dissent.
As our Court has emphasized, “an accused has a tough row to hoe to secure acquittal by virtue of entrapment because ‘[a] law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes.’ ” United States v. Lemaster, 40 MJ 178, 180 (CMA 1994) (quoting United States v. Whittle, 34 MJ 206, 208 (CMA 1992)). That task becomes particularly daunting if the military judge denies the accused the opportunity to present evidence that goes “to the heart” of his or her entrapment defense.
In an entrapment case, the determination as to whether an accused was entrapped is a subjective inquiry that “must be resolved by the fact finder.” United States v. Vanzandt, 14 MJ 332, 343 (CMA 1982). The issue of entrapment “involves balancing the accused’s resistance to temptation against the amount of government inducement.” Id. at 344. Because this is a factual issue, our resolution of the present appeal does not turn on whether we would believe appellant’s version of the events, see United States v. Wells, 52 MJ 126, 131 (1999), or whether the evidence was sufficient as a matter of law. Compare Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The issue we must resolve is “whether the error had a substantial influence on the findings.” United States v. Adams, 44 MJ 251, 252 (1996) (articulating standard for nonconstitutional errors) (citations omitted); see also United States v. Jefferson, 13 MJ 1, 4 (CMA 1982) (test for harmless error under constitutional standard is “whether ‘evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice.’ ”) (citation omitted).
The majority opinion contends that the Government’s evidence was “strong” on the *439 question of entrapment, relying principally on the claim that “Hillhouses’s testimony established that appellant was interested in obtaining steroids but had no money to buy them,” to show predisposition. 56 MJ at 437. The majority opinion also relies on the contention that appellant’s testimony demonstrates that he resisted Stachum’s repeated requests for steroids only because he did not have a source to supply Stachum until Hill-house approached him. Id. The evidence, however, raises more than a reasonable doubt on a number of key points.
First, with respect to Hillhouse, who testified under a grant of immunity, his testimony is quite ambiguous on the issue of whether— at the time of the controlled buy or any other time — appellant was interested in buying steroids but had no money to do so. On direct examination, Hillhouse testified as follows:
Q: Before you left for Washington, did you ever have a conversation with the accused about steroids?
A: Quite frequently.
Q: What were these conversations about?
A: They were just basic questions and basic conversations to the effect that do you know the pros and cons — pretty much what they [steroids] can do for you.
Q: Did you ever have a conversation with him about what you were going to do when you go to Washington?
A: The only thing I would be able to recall is I would attempt to purchase them [steroids]. I by no means knew for sure if I was going to.
Q: So, you told the accused that you were going to try to buy some steroids?
A: Yes.
Q: And what did he say in response to that?
A: Really not too much. And if he had money, he would probably want me to buy some. I don’t have the 100% prove [sic] on that though.
(Emphasis added.) This testimony does not establish beyond a reasonable doubt that appellant lacked sufficient funds to purchase steroids. At most, it indicates that appellant may not have had the necessary funds prior to the time Hillhouse purchased the steroids on June 16 while in Washington state. The testimony does not directly address appellant’s ability to purchase the steroids on July 9, the date of the controlled buy.*
Second, appellant’s testimony does not establish beyond a reasonable doubt that his resistance to Stachum’s inducement was based solely on the fact that he did not have a source to fulfill Stachum’s request. Although such a conclusion is one possible inference that could be drawn from the evidence, appellant’s testimony does not establish this fact beyond a reasonable doubt. The Government did not prove that, absent Stachum’s three-month campaign of inducement, or prior thereto, appellant nonetheless would have engaged in the criminal conduct for which he was convicted, illegal distribution of steroids, in order to obtain steroids for his own personal use. See Jacobson v. United States, 503 U.S. 540, 549 n. 2, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).
Appellant’s admission that he sold the steroids in part so that he could use them is not dispositive. See United States v. Eckhoff, 27 MJ 142, 144 (CMA 1988) (holding “that a profit motive does not automatically negate an entrapment defense”). Accordingly, a drug user who is motivated in part by a desire to use drugs, or who otherwise benefits from a transaction, does not forfeit the entrapment defense. The prosecution must still demonstrate that such a person would *440 have acted in the absence of the Government’s inducement or conceived the idea “prior to first being approached by Government agents.” United States v. Howell, 36 MJ 354, 358 (CMA 1993) (quoting Jacobson, supra at 549, 112 S.Ct. 1535) (emphasis added).
Consistent with this requirement, we have acknowledged that profit motive may be considered as one factor in determining whether an accused was predisposed to commit the charged crime, but we have not held that the presence of such motive precludes the defense. See, e.g., United States v. Cooper, 35 MJ 417, 425 (CMA 1992) (profit motive identified as one of five factors to show predisposition); United States v. Bell, 38 MJ 358, 360 (CMA 1993) (“unquestionably, the entrapment defense was raised by appellant’s own testimony,” though appellant profited from transaction); United States v. Bailey, 21 MJ 244, 245 (CMA 1986) (guilty plea improvident and entrapment defense raised where appellant gained profit from illegal distribution). In Howell, supra, we relied upon federal civilian opinions that have similarly identified profit motive as one among several factors that may be considered when assessing predisposition. See United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir.1983) (identifying five “factors relevant in determining predisposition,” including character, whether the Government first suggested the illegal conduct, and profit motive); United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992) (same); see also United States v. Martinez, 122 F.3d 1161, 1163 (9th Cir.1997) (holding “none of [five] factors is controlling” as to predisposition, including profit motive); United States v. Miller, 71 F.3d 813, 816 (11th Cir.1996) (noting prior decisions have “refused to enumerate a list of factors to address when a defendant’s predisposition is at issue because the inquiry ... is necessarily ... fact-intensive”).
The predicate factual issue in this case is whether the Government’s inducement set off the chain of events which led to appellant’s participation in the sale of steroids on July 9, the resolution of which includes assessing whether appellant sufficiently “resisted] ... temptation against the amount of government inducement” to warrant acquittal. Vanzandt, 14 MJ at 344. The Court of Criminal Appeals held that Gilbert’s testimony was admissible as a prior consistent statement to rebut the Government’s attack on appellant’s truthfulness on cross-examination, as evidence of appellant’s state of mind, and to impeach Stachum, who claimed never to have asked appellant for steroids. All of these reasons constitute factors that bear directly upon the issue of appellant’s predisposition. As the members were presented only with the testimony of appellant and Stachum on the entrapment question, resolution of this question turned entirely on credibility. Under these circumstances, the exclusion of Airman Gilbert’s testimony was prejudicial because it deprived the defense of the opportunity to have the credibility question resolved by the members.

 It is noteworthy as well that appellant did not testify as to his ability (or inability) to pay the $120 to purchase Hillhouse’s leftover steroids, nor did trial counsel inquire about this matter on cross examination. Moreover, trial counsel did not proffer any other evidence on this point. Equally telling is the fact the Government’s brief does not rely on appellant’s purported inability to pay to show predisposition. See Government Brief at 15 (arguing only that appellant was motivated by a desire “to obtain [steroids] for his own use”). As defense counsel noted in his closing argument at trial, “There’s no evidence that Airman Hall couldn’t have gone out and bought those steroids just for himself.”