# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman Basic SAMUEL B. ROBERSON
## United States Air Force

## ACM 38257

## 19 May 2014

Sentence adjudged 27 September 2012 by GCM convened at Goodfellow Air Force Base, Texas. Military Judge: Dawn R. Eflein (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 11 months, and forfeiture of all pay and allowances.

Appellate Counsel for the Appellant: Captain Christopher D. James.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Roberto Ramirez; and Gerald R. Bruce, Esquire.

Before

MARKSTEINER, HECKER, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

HECKER, Judge:

A general court-martial composed of a military judge sitting alone convicted the appellant, contrary to his pleas, of attempted wrongful possession of cocaine on one occasion and wrongful use of hydrocodone on divers occasions, in violation of Articles 80 and 112a, UCMJ, 10 U.S.C. §§ 880, 912a.[1] Consistent with his pleas, the appellant was convicted of violating a lawful general regulation by wrongfully using Spice, in violation of Article 92, UCMJ, 10 U.S.C. § 892. The approved and adjudged

---

[1] The appellant was acquitted of attempting to use cocaine and of wrongfully using and distributing methamphetamine.

sentence consisted of a bad-conduct discharge, confinement for 11 months, and forfeiture of all pay and allowances.

The appellant alleges two errors: (1) the military judge abused her discretion when she denied the defense motion to suppress evidence based on a violation of 42 C.F.R. § 2.17, and (2) the Government failed to disprove the entrapment defense beyond a reasonable doubt.[2] Finding no error materially prejudicial to the substantial rights of the appellant, we affirm.

*Background*

In early February 2012, an Army private named RR was attending a course at Goodfellow Air Force Base and met with agents from the Air Force Office of Special Investigations (AFOSI) to talk about his knowledge of an airman (not the appellant) who was using drugs on base. When RR agreed to act as a confidential informant for AFOSI, the agents briefed him, completed paperwork to effectuate that agreement, and asked him to inform them if he heard about any criminal activity by military members. During this same meeting, RR told the agents the military might be sending him to a civilian inpatient drug rehabilitation facility due to his abuse of prescription drugs. The next day, after he advised the agents that he would indeed be entering the facility, one of the agents told RR that AFOSI was not going to "work him" while he was in the facility. RR testified that the agent told him to "get better, take care of yourself, and then come back."

While at the facility, RR met the appellant, who was also receiving treatment there based on his problems with alcohol. After a friend of the appellant visited him in the treatment facility, the appellant told RR that the two "partied" and used cocaine together when he was off base. RR and the appellant talked about cocaine on several other occasions as well. RR testified that when he gathered that information, he felt like he was working with AFOSI.

After RR completed his treatment in late February, he told the AFOSI agents about meeting the appellant and what he had said. The agents recognized the appellant's name as an airman who had been rumored to use illegal drugs. Upon learning the two had agreed to meet after their release, the AFOSI agents encouraged RR to keep communicating with the appellant and to find out information about his illegal drug activity.

At some point in March 2012, the appellant told RR he could get cocaine from a friend. The agents told RR to encourage the appellant to procure the cocaine. Although the two had several discussions about it, the appellant never arranged for the cocaine purchase, and at one point told RR he was not interested in doing so. In April 2012, RR

---

[2] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

told the AFOSI agents he had seen the appellant use Spice on one occasion but nothing else. The agents then arranged for RR to ask the appellant if he wanted to use cocaine with him. On 4 May 2012, the appellant was arrested by the agents after he pocketed a bag of what RR told him was cocaine. The military judge acquitted the appellant of attempting to use cocaine on this occasion but convicted him of attempting to possess it.

*Motion to Suppress*

At trial, the appellant moved to suppress all testimony and evidence derived from RR, on the basis that 42 C.F.R. § 2.17 prohibits the Government from using certain information obtained by an informant while he is in a federally assisted drug rehabilitation program. After hearing testimony from RR, the appellant, and one of the AFOSI agents, the military judge denied the motion. The appellant contends this constituted an abuse of her discretion. We disagree.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). "In reviewing a military judge's ruling on a motion to suppress, we review factfinding under the clearly-erroneous standard and conclusions of law under the *de novo* standard." *Id.* (citations omitted). Thus, on a mixed question of law and fact, as in this case, a military judge abuses her discretion if her findings of fact are clearly erroneous or if her decision is influenced by an erroneous view of the law. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

The appellant does not take issue with any of the specific factual findings made by the military judge. The military judge found, by a preponderance of the evidence, that RR became a confidential source for AFOSI on the day he first met with the agents and that, after he told the agents he would be entering drug treatment, the agents informed him "he would not be being handled while he was in inpatient treatment, that the focus was for him to get better." She concluded that the AFOSI agents told RR he would not be required to perform any operations while he was receiving treatment, but they did not affirmatively tell him he should not gather information. The military judge found RR "[s]ubjectively . . . believed that when he was not in group treatment [sessions at the facility], he was still working for [AF]OSI" as a confidential source and collected this information on the appellant under that belief. The military judge also found, although the AFOSI agents had previously heard rumors the appellant was involved in drugs, they had not opened an investigation on him and did not know the appellant was going to the facility for treatment. Thus, the appellant was not a target of the AFOSI, and the agents did not tell RR to develop information about him while at the facility.

The military judge found that during the time RR and the appellant were patients together, they talked about the appellant's cocaine use. In a sworn statement provided shortly after he left the facility, RR relayed that the appellant said he had used cocaine in

the past and had a civilian friend who could procure cocaine. When RR asked if the appellant could get him some cocaine when they left treatment, the appellant said he could. The military judge found that the AFOSI agents spent the month of March 2012 unsuccessfully attempting to catch the appellant using, buying, or distributing cocaine. In April 2012, the appellant told RR he could not procure cocaine for him, he was not going to use cocaine, and he did not want to get in trouble.

The military judge also found that AFOSI then arranged a "sting" operation in early May 2012 where RR was supposed to ask the appellant if he wanted to use cocaine with him. Instead, RR asked the appellant if he would meet RR to determine if RR had been "ripped off" during a recent cocaine purchase and if he wanted to use cocaine. After the appellant agreed to meet RR in a dormitory parking lot, RR handed the appellant the bag of "cocaine" for his inspection. As the AFOSI agents approached him, the appellant put the bag in his pocket and was arrested.[3]

In addition to these findings of fact, the military judge made conclusions of law, which we review de novo. *Ayala*, 43 M.J. at 298. The C.F.R. provisions relevant to this case codify Congress's decision to generally restrict the disclosure and use of information about individuals in federally-assisted drug or alcohol abuse treatment programs as a way to encourage people to seek treatment.[4] That statutory authority is found in 42 U.S.C. § 290dd-2, which provides:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided . . . be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under . . . this section.

*See* 42 C.F.R. § 2.1.[5]

---

[3] This served as the basis for his conviction of attempted wrongful possession of cocaine.

[4] *See* H.R. Rep. No. 92-775, at 28 (1972), reprinted in 1972 U.S.C.C.A.N. 2045, 2072 (explaining the confidentiality provisions in the predecessor to 42 U.S.C. § 290dd-2 were necessary because "[w]ithout that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome"); S. Rep. No. 102-131, at 2 (1991), reprinted in 1992 U.S. Code Congressional & Administrative News 277, 278 (stating the Alcohol, Drug Abuse and Mental Health Administration Reorganization Act, which included 42 U.S.C. § 290dd-2, was aimed at fighting "drug abuse, alcohol abuse and mental illness").

[5] *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 8.10 (6 June 2013) ("Federal statutes and regulations restrict the disclosure of records as to the identity, diagnosis, prognosis, or treatment of drug and alcohol abusers under the Federal drug and alcohol abuse prevention programs. Refer to 42 U.S.C. § 290dd-2 and 42 C.F.R. § 2.12."); Department of Defense Instruction 1010.01, *Military Personnel Drug Abuse Testing Program (MPDATP)*, Enclosure 2, ¶ 2 (13 September 2012).

The statute expressly limits the availability of such records for use in criminal proceedings. "Except as authorized by a court order [for good cause] . . . no [such] record . . . may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient." 42 U.S.C. § 290dd-2(c). A related provision in 42 C.F.R. § 2.17(b), states "no information obtained by an . . . informant [in a treatment program] . . . may be used to criminally investigate or prosecute any patient." An informant is defined as someone who is or becomes a patient at the facility and who "at the request of a law enforcement agency or official observes one or more patients . . . for the purpose of reporting the information obtained to the law enforcement agency or official." 42 C.F.R. § 2.11(a)-(b).

As he did at trial, the appellant argues that RR was acting as an informant when he learned about the appellant's past and planned future drug use at the treatment facility and thus 42 C.F.R. § 2.17 precluded the Government from using that information and all evidence generated from it. The military judge concluded that the appellant's "personal conversation" with RR about future cocaine use was not the type of communication that is covered by the C.F.R. provisions, which she found only applied if the communications were "for the purpose of treating alcohol or drug abuse, making a diagnosis for that treatment, or making a referral for that treatment." She also found that RR was not acting at the request of a law enforcement agency in observing patients for the purpose of reporting information to law enforcement, stating that "[a]lthough [RR] subjectively thought he might be doing that, [AF]OSI did not place him in the treatment program, [AF]OSI did not target [the appellant], and [AF]OSI was not expecting to hear information about other people in the drug treatment program." Given that, the military judge found the federal regulations did not require the exclusion of RR's testimony or the evidence developed by AFOSI from its contacts with RR.

We agree. As the military judge found, the restrictions on the use of treatment information to initiate or substantiate criminal charges or to criminally investigate a patient apply to information obtained by a treatment program in order to diagnose or treat patients or refer them for further treatment. 42 C.F.R. § 2.12(a)(2). The conversation between the appellant and RR occurred outside of any group therapy or treatment activity, and thus does not constitute the type of information this disclosure restriction was designed to keep confidential. Furthermore, RR did not meet the definition of an "informant" as he was not observing the appellant at the request of AFOSI for the purpose of reporting information to the agents, regardless of his subjective belief that he was engaged in this activity. We do not elect to impute this belief to the agents, who were unaware that the appellant was enrolled in the treatment program at the time they initially interacted with RR.

The factual findings by the military judge are not clearly erroneous. We also find that her decision was not influenced by an erroneous view of the law. As such, the

military judge did not abuse her discretion in denying the defense motion to suppress the testimony of RR and the evidence derived from his contacts with AFOSI.

*Entrapment*

The appellant argues, as he did at trial, that the Government failed to disprove the defense of entrapment beyond a reasonable doubt because after the appellant "gave up wanting to commit a crime [involving cocaine] AFOSI decided to bring the crime to him." We disagree.

Entrapment is an affirmative defense, where "the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." Rule for Courts-Martial 916(g).

> The defense has the initial burden of going forward to show that a government agent originated the suggestion to commit the crime . . . [and] the burden then shifts to the Government to prove beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense prior to first being approached by Government agents.

*United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002) (citations and internal quotation marks omitted).

Prior to entering her findings, the military judge made findings regarding the defense's entrapment argument. She found the Government "did not plant the criminal design in the mind of [the appellant,]" given the appellant's conversations with RR about drug use, his statements in the rehabilitation facility that he knew where to get cocaine, his use of Spice (unprompted by RR) the night before the sting operation, and that he included the qualifier "while on active duty" when he said he did not want to use cocaine. Based on the evidence presented at trial, the military judge concluded the Government had shown beyond a reasonable doubt that the appellant was predisposed to commit the crime of cocaine possession prior to being approached by RR.

We agree. The essence of entrapment is an improper inducement by Government agents to commit the crime. *United States v. Howell*, 36 M.J. 354, 359 (C.M.A. 1993). Such improper inducement does not exist if Government agents merely provide the opportunity or facilities to commit the crime. Instead, the Government conduct must "create[] a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense . . . [and may take the form of] pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." *Id.* at 359-60 (citations and internal quotation marks omitted). A

Government agent's repeated requests for drugs "do not in and of themselves constitute the required inducement" to constitute entrapment. *Id.* at 360. Here, the Government conduct did not create a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense, and the appellant was not an undisposed person in this context.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38257