# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

### No. 201700008

_____

### UNITED STATES OF AMERICA
Appellee

v.

### JACK L. GRINA
Lance Corporal (E-3), U.S. Marine Corps
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Eugene H. Robinson, Jr., USMC (Arraignment); Lieutenant Colonel A. N. Subervi, Jr., USMCR.
Convening Authority: Commanding General, 1st Marine Aircraft Wing, Camp Foster, Okinawa, Japan.
Staff Judge Advocate's Recommendation: Major Christopher W. Pehrson, USMC.
For Appellant: Lieutenant Commander William L. Geraty, JAGC, USN; Lieutenant Rachel Reddick, JAGC, USN.
For Appellee: Lieutenant George R. Lewis, JAGC, USN; Lieutenant James M. Belforti, JAGC, USN.

_____

Decided 8 February 2018

_____

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

_____

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

_____

HUTCHISON, Senior Judge:

A panel of officer and enlisted members sitting as a general court-martial convicted the appellant, contrary to his pleas, of attempted sexual assault of a child, attempted sexual abuse of a child, and intentionally communicating

indecent language, in violation of Articles 80 and 134, Uniform Code Military Justice (UCMJ), 10 U.S.C. §§ 880 and 934 (2016). The members sentenced the appellant to two years' confinement, reduction to paygrade E-1, total forfeiture of pay and allowances, and a dishonorable discharge. The convening authority approved the adjudged sentence and, except for the discharge, ordered it executed.

The appellant assigns three errors: (1) the evidence is factually and legally insufficient to prove that he had the specific intent to commit sexual assault of a child or took a substantial step to do so; (2) the government failed to prove beyond a reasonable doubt that the appellant was not entrapped; and (3) the appellant's sentence was inappropriately severe.

Having carefully considered the record of trial and the parties' submissions, we are convinced that the findings and the sentence are correct in law and fact and find no error materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In February 2016, while stationed onboard Camp Hanson, Okinawa, the appellant responded to a personal advertisement in Craigslist's "strictly platonic" section, and thereafter began communicating via a social media application with a person purporting to be a 14-year-old Air Force dependent named "Christina Gomez."[1] Unbeknownst to the appellant, Christina Gomez was actually an active duty Sailor, working as an undercover agent (UC) with the Naval Criminal Investigative Service (NCIS) as part of an ongoing sting operation targeting service members attempting to have inappropriate relationships with minors.

For several weeks, the appellant's text messages to Christina were nonsexual and discussed a myriad of topics—work, school, music, and movies. On several occasions, the appellant expressed concern that Christina was not who she claimed to be. He asked her "just . . . how real" she was;[2] told her he was "sketched out" and wondered if she was real after she told him she did not have Snapchat and did not know what it was;[3] and asked her if she was "NCIS or CID or anything fake[.]"[4] After Christina's repeated assurances that she was real, the appellant continued texting. After several weeks of exchanging these conversational texts, the UC's supervisor directed the UC

---

[1] Record at 286.

[2] Prosecution Exhibit (PE) 4 at 31.

[3] *Id.* at 48.

[4] *Id.* at 91. CID stands for Criminal Investigation Division.

to "end the communication," because it did not look like the appellant was "going to commit a crime."[5]

Shortly after law enforcement decided to wind down the investigation, the appellant's conversations with the UC began to focus on their relationship. Specifically, the appellant asked Christina where she saw their relationship going. The UC redirected the question back to the appellant, who responded that "it's hard to say [because] the age thing is trouble[.]"[6] Eventually, the appellant asked Christina if she "want[ed] to be just friends or more[,]" and suggested they begin "dating."[7] The appellant then asked Christina what would happen when they met. Christina answered "Idk bf and gf stuff."[8] The appellant understood this to mean sex[9] and the text message conversation between Christina and the appellant became more explicit. The appellant told Christina that he was surprised she did not have a boyfriend because he lost his virginity when he was 14. He asked her what type of sexual things she had done and Christina replied "blowjobs."[10] The appellant followed up by asking Christina whether she had "ever been eaten out."[11]

The appellant and Christina then made plans to meet at Christina's house onboard Kadena Air Force Base. Two days before the appellant took a taxi to meet her, Christina asked the appellant again if he was ok with her age, stating "I do turn 15 soon."[12] The appellant replied, "Yea . . . if for sure you [sic] 100% real and not trying to get me in trouble then yea."[13] They discussed what they would do when they met. The appellant expressed a desire to perform oral sex on Christina and asked whether she "want[ed] to do more like give [him] oral or sex[.]"[14] The appellant told Christina to "plan to have oral but prepare in case more happens[.]"[15] Finally, the appellant

---

[5] *Id.* at 206-07.

[6] PE 4 at 187.

[7] *Id.* at 189.

[8] *Id.* at 197.

[9] *See id.* at 205 ("You say your (sic) not experienced so I was thinking you were thinking of like sex").

[10] *Id.* at 228.

[11] *Id.* at 229.

[12] *Id.* at 273.

[13] *Id.*

[14] *Id.* at 294.

[15] *Id.* at 296.

finished with "I literally don't plan on anything other than kiss[,] cuddle and eat you out[;] whatever else happens happens[.]"[16]

On the day he was scheduled to meet Christina, the appellant left his Marine barracks and traveled to Kadena in a taxi with other Marines. He told the other Marines that he was meeting a 19-year-old girl. The appellant was apprehended by NCIS agents prior to entering the house with a condom in his pocket. During a subsequent interrogation, the appellant admitted he knew that Christina was only 14, but claimed he only intended to kiss her. He acknowledged, however, that he "[w]ould have done [his] best not to" receive oral sex, "but [if] it moved to anything like oral, then it would have."[17]

## II. DISCUSSION

### A. Legal and factual sufficiency

The appellant argues that the government failed to prove beyond a reasonable doubt that he had the requisite *mens rea* to commit the attempted sexual assault. Specifically, that his "words and actions demonstrate that his travel to [the UC's] home was undertaken without the specific intent to commit sexual abuse of a child."[18] We disagree.

We review questions of legal and factual sufficiency *de novo*. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether, "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007) (citations omitted). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as

---

[16] *Id.* at 299.

[17] PE 10; Appellate Exhibit X at 19.

[18] Appellant's Brief of 16 May 2017 at 32.

to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. We may "judge the credibility of witnesses, and determine controverted questions of fact," and substitute our judgment for that of the fact finder. Art 66(c), UCMJ; *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin*, 63 M.J. at 557.

The elements of attempted sexual assault of a child are: (1) that the appellant did a certain overt act; (2) that the act was done with the specific intent to commit a sexual act upon a child; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 4.b (2016 ed.). "[T]he overt act must amount to a 'substantial step' toward commission of the intended crime, and it must be an act that is strongly corroborative of the firmness of the accused's criminal intent." *United States v. Williamson*, 42 M.J. 613, 616 (N-M. Ct. Crim. App. 1995) (quoting *United States v. Byrd*, 24 M.J. 286 (C.M.A. 1987)) (additional citations omitted). The substantial step must "unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances." *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (citations, internal quotation marks, and alteration omitted). Traveling to meet a minor for sexual activity may constitute a substantial step in a prosecution for attempted sexual assault of a child. *See Id.* ("courts agree that travel constitutes a substantial step" in prosecutions for child enticement under 18 U.S.C. § 2422(b)); *United States v. Beltran*, No. 201500270, 2017 CCA LEXIS 96 at *13, unpublished op. (N-M. Ct. Crim. App. 14 Feb 2017) (concluding appellant's travel to meet an undercover agent he believed to be a 14-year-old girl amounted to a "substantial step towards having sex with her"), *rev. denied*, 76 M.J. 400 (C.A.A.F. 2017) .

The appellant avers that his travel to Christina's house—the substantial step necessary for his attempted sexual assault of a child conviction—was "undertaken without the specific intent to commit sexual [assault] of a child."[19] Instead, the appellant claims he intended only innocent activity when he traveled to meet Christina. The appellant's text messages to Christina, however, belie any innocent intent. Acutely aware of Christina's age, and concerned that she might be "NCIS or CID,"[20] the appellant nonetheless engaged in graphic discussions about what their encounter would

---

[19] *Id.*

[20] PE 4 at 91.

entail and reminded her to "plan to have oral [sex] but prepare in case more happens[.]"[21]

Consequently, after carefully reviewing the record of trial and considering all of the evidence in a light most favorable to the prosecution, we are convinced that a rational fact-finder could have found that the appellant specifically intended to engage in the charged sexual acts with Christina and that he took a substantial step toward completing his intended crime when he traveled to meet her at her home onboard Kadena Air Force Base. Additionally, after weighing all the evidence presented at trial and making allowances for not having personally observed the witnesses, we are convinced beyond reasonable doubt of the appellant's guilt.

**B. Entrapment**

The appellant next claims that he was entrapped and that the evidence against him is factually insufficient for that reason as well. The appellant argues that we cannot be convinced beyond a reasonable doubt that he was not entrapped because he was induced, through the UC's persuasion, to commit a crime that he was not predisposed to commit. As we noted above, we review an appellant's factual insufficiency claims *de novo*. Art. 66(c), UCMJ; *Washington*, 57 M.J. at 399.

The military judge instructed the members regarding entrapment and reiterated that "to find the [appellant] guilty, you must be convinced beyond a reasonable doubt that the [appellant] was not entrapped."[22]

Entrapment is an affirmative defense in which "the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense."[23] In order for an entrapment defense to prevail, the defense has the "initial burden of . . . show[ing] that a government agent originated the suggestion to commit the crime." *United States v. Whittle*, 34 M.J 206, 208 (C.M.A. 1992). Once the defense has met that initial burden, the burden shifts to the government to prove either, (1) that the "criminal design did not originate with the [g]overnment;" or (2) "that the accused had a predisposition to commit the offense . . . prior to first being approached by [g]overnment agents." *Id.* (citations and internal quotation marks omitted).

---

[21] *Id.* at 296.

[22] Record at 580.

[23] R.C.M. 916(g).

*1. Inducement*

In effect, the first element of entrapment is an inducement by the government to commit the crime. *United States v. Howell*, 36 M.J. 354, 359-60 (C.M.A. 1993). "Inducement is government conduct that creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense" and can take many forms, including fraudulent representations, threats, persuasion, coercive tactics, or even pleas "based on need, sympathy, or friendship." *United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002) (citations and internal quotation marks omitted). However, there is no inducement where government agents simply provide "the opportunity or facilities to commit the crime[.]" *Id.* at 437 (citations and internal quotation marks omitted).

The appellant argues that the UC induced him to engage in the offenses. First, he contends that his repeated requests to meet Christina in public were foreclosed by the UC, who insisted that the only way to meet would be alone at her house. In addition, the appellant argues that his stated intentions to "talk, chill, watch a movie, or eat pizza" when he and Christina met, were proclaimed "lame" and "boring" by the UC.[24] Finally, the appellant claims that two days before he and Christina were supposed to meet, the UC escalated the conversation by demanding specific details regarding what they would do, specifically asking the appellant to "tell [her] more about pleasing women[,]"[25] and confiding that her worst fear [was] getting preggo."[26] Again, we disagree.

While the NCIS sting operation may have given the appellant the opportunity to commit the crimes, he was not induced. After learning that Christina was only 14 years old, the appellant first suggested meeting in person. Unprompted, the appellant asked Christina if she wanted to be more than friends and disclosed some of his sexual history to her before asking what type of sexual things she had done. After arranging to meet and discussing what they were going to do, Christina provided the appellant with an opportunity to de-escalate their upcoming encounter by reminding him "kiss[ing] and cuddl[ing] is cool if you want to stop there[.]"[27] The appellant responded that he "would love to please [her,]" clarifying that "giving you oral is just great to me[.]"[28] The day before the planned meeting, the appellant

---

[24] Appellant's Brief at 39.

[25] PE 4 at 267.

[26] *Id.* at 291.

[27] *Id.* at 289.

[28] *Id.* at 289, 294.

asked Christina if she still wanted him to come over. Christina once again provided the appellant an opportunity to back out of their meeting, reminding the appellant "its 1000000% up to [him]."[29] Based on these facts, we conclude the appellant was not induced, and that government agents merely provided him an opportunity to commit the offense.

*2. Predisposition*

"Evidence that 'a person accepts a criminal offer without being offered extraordinary inducements . . . demonstrates his predisposition to commit the type of crime involved.'" *United States v. Bell*, 38 M.J. 358, 360 (C.M.A. 1993) (citing *United States v. Evans*, 924 F.2d 714, 718 (7th Cir. 1991)) (additional citation omitted). Further, concern that a minor is an undercover agent may be used to demonstrate criminal intent and predisposition for commission of such a crime. *See United States v. Unrein*, 688 F. App'x 602, 609 (11th Cir. 2017) (holding that the defendant's concern that the minor "was an officer conducting a sting operation does not demonstrate the [g]overnment's pushing the plan on him; it demonstrates his criminal intent.").

The appellant argues that he showed absolutely no predisposition towards the offenses because he never sought out any underage persons, never searched or looked at child pornography and lacked any criminal background. He argues that this shows he lacked the "inclination, willingness, or readiness to engage in the illegal activity for which he is charged[.]" *United States v. Kemp*, 42 M.J. 839, 845-46 (N-M. Ct. Crim. App. 1995) (quoting *United States v. Dozal-Bencomo*, 952 F.2d 1246, 1250-51 (10th Cir. 1991)). Again, the appellant's actions belie any lack of predisposition. After being reminded of Christina's age, and without "extraordinary inducements," the appellant continued to pursue a sexual relationship with her, expressing concern that he could get in trouble if caught. This is not the behavior of an otherwise law-abiding citizen or a person undisposed to committing sexual acts with minors.

## C. Sentence appropriateness

Finally, the appellant argues that his adjudged sentence was inappropriately severe since he was a "young Marine, barely out of his teenage years stationed in a foreign country who only sought adult platonic friendship."[30]

We review the record for sentence appropriateness *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "Sentence appropriateness involves the

---

[29] *Id.* at 313.

[30] Appellant's Brief at 49.

judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted). While we have discretion to determine whether a particular sentence is appropriate, we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010).

We have reviewed the entire record and given consideration to the appellant's service record and the other evidence in extenuation and mitigation. We have also considered the nature of the offenses in this case—the appellant's convictions triggered a mandatory dishonorable discharge and his maximum punishment included potential confinement for 35 years. With individualized consideration of the appellant, the nature and seriousness of his offenses, his record of service, and all matters within the record of trial, we find that his adjudged sentence is appropriate under these circumstances.

### III. CONCLUSION

The findings and sentence are affirmed.

Judge FULTON and Judge SAYEGH concur.

For the Court



R.H. TROIDL
Clerk of Court

9